[Wills et al. v. Kane.]

WESTERN DISTRICT, PITTSBURGH, 1853.

# Wills et al. *versus* Kane.

1. The Act of the 27th February, 1798, relative to the production of books and papers, on trials, is a remedial statute, framed to aid in the attainment of substantial justice, and intended to furnish a bill of discovery to courts, which did not possess that remedy ; and should be enforced freely and decidedly, and in its true spirit.

2. In a proceeding to compel the production of books and papers, the statute must be followed, for the rule is, that whoever seeks the benefit of a statutory remedy, must bring his case within the substantial provisions of the statute.

3. The affidavit and notice, to compel the production of books and papers on a trial, must describe the books and paper with reasonable certainty ; must allege, that the affiant verily believes them to be in the possession or power of the party ; and that they contain evidence pertinent to the issue.

4. If a party fail to produce books and papers, in accordance with a rule upon him, or account satisfactorily for not doing so, the court renders a judgment of non-suit, if against the plaintiff, or a judgment by default, if the defendant was the party ruled, "as far as relates to such part of the plaintiff's demand, or of the defendant's defence, to which the books or papers of the party are alleged to apply."

5. In cases of non-production of books and papers, in obedience to a rule, the judgment to be rendered is one of default, and is to be liquidated, as in other cases of judgment by default.

ERROR to the District Court of *Allegheny county*.

This was an action of assumpsit, in the District Court of Allegheny County, brought to January Term, 1852, by Michael Kane, Jr., surviving partner of the late firm of Roberts & Kane, against John A. Wills and John Coyle, late partners, under the firm of Wills & Coyle. The plaintiff filed with his præcipe, January 3, 1852, an affidavit, under the rule of court, claiming a right to recover from the defendants, the sum of $3100, with interest thereon, from Oct. 1, 1851. The said sum of $3100 being money collected by said firm of Wills & Coyle, for use of said plaintiff.

Jan. 5, 1852. John A. Wills, one of the defendants, who appeared for himself alone, on behalf of himself alone filed an affidavit of defence, to the whole of the plaintiff's claim, with the exception of the sum of $174.05, with interest from November 24, 1849 ; it being the amount of a judgment against James B. Irwin, No. 262, January Term, 1849, which he alleged he had twice tendered to the plaintiff, before the institution of the suit, and for which he tendered the plaintiff a judgment or the money, at his option. John Coyle, the other defendant, filed no affidavit of defence to the claim, or any part of it, and made no defence throughout the case.

Jan. 20, 1852, plaintiff filed a narr. against the defendant's late partner, under the firm of Wills & Coyle, in a plea of tres-

pass on the case, with three counts, claiming to recover the sum of $4000; in the first count, as "*money had and received* by the defendants, for the use of the said plaintiff;" in the second, as "*money lent* by the plaintiff to the defendants, at their special instance and request," and in the third, "as money found to be due from the defendants to the plaintiff, *on an account stated* between them."

A rule to choose arbitrators, having been taken out, John A. Wills, on the 3d of February, 1852, pleaded for himself alone, non-assumpsit, payment, set-off, with leave, &c.

March 20, 1852. Nothing having been done under the rule, it was stricken off at plaintiff's cost, with consent of the other party.

March 27, 1852. Rule to show cause why the books and writings mentioned in affidavit filed, should not be produced in court, and abide the further order of court, returnable on Saturday, 4th of April, 1852.

October 16, 1852. On motion of Messrs. Magraw & Hamilton, attorneys for plaintiff, the rule of March 27, 1852, was discharged, and the plaintiff had leave to withdraw the affidavit then filed, and file it anew, which was done; and thereupon the court granted a rule on the defendants, to show cause why they should not produce *on the trial of this cause*, the books and writings mentioned in said affidavit.

Plaintiff's affidavit, &c.—"*Allegheny county, ss.* And now to wit, March 27, A. D., 1852, Michael Kane, Jr., the plaintiff in the above action, saith that the defendants in the above action, have certain books and writings in their possession or power, which contain evidence pertinent to the issue. in the above pending action, which said books and writings they have refused to produce, and still refuse to produce, although notified and requested so to do. That the said books and papers, are the books and papers of the late partnership, or joint business of the defendants, to wit: their dockets, day-books, journals, ledgers, cash-books, blank-books, adventure-books, or books containing adventure accounts, the article of co-partnership between the defendants, and also, the original letter of attorney, from the plaintiff to the defendants, or one of them, dated in the early part of the year 1849, and that the said books and writings are exclusively in the possession or power of one or both of said defendants.

M. KANE, Jr."

"Sworn to and subscribed in open court.
GEO. S. HAYS, Proth'r."

Answer of John A. Wills.—Prior to the hearing of this rule, John A. Wills, in reply thereto, filed the following answer, viz:

"That the question of the above case, is simply the liability of this respondent, as a member of the late firm of Wills &

Coyle, for a sum of money, viz: the sum of three thousand one hundred dollars, or thereabouts, for which John Coyle, the other defendant, admits himself to be liable, and for which the said Coyle has executed to the plaintiff a judgment bond, as a security, and for the payment of which, in part at least, he has executed to plaintiff a conveyance of certain lands in Erie county, as this respondent has been informed, and verily believes.

"That John Coyle may be indebted to plaintiff in the amount claimed, this respondent has no disposition to deny, but that this respondent is jointly liable with him, to the plaintiff, for any amount, he utterly denies.

"This much this respondent deems it proper to say, in order that the court may see the true position of the case, the true issue, and the relative position of the several parties to the controversy.

"In this posture of affairs, your honors have granted a rule upon this respondent, to show cause why certain books, specified in the notice, should not be produced on the trial of the cause in which the rule is granted.

"In answer to this rule, this respondent replies, that he has *no* books or writings in his possession or power, which contain *evidence pertinent to the issue* in the above pending action; because, he says, the said books or writings contain no entries in the handwriting of this respondent, or in the handwriting of the said Coyle, made with the knowledge or privity of this respondent, pertinent to the said issue; that the entries relied upon by the plaintiff, and sought to be made evidence against the respondent by this appeal to the discretionary power of the court, were made by the said Coyle, without the knowledge or consent of this respondent, and with the view unjustly to charge this respondent, and throw upon him a portion of the responsibility which should devolve solely on the said Coyle; that the character of said entries, and the circumstances under which they were made, destroy all credit which might otherwise attach to them, if fairly and properly made; in order to show which, and for the information of the court, this respondent states: that many of them are ante-dated and written on blank leaves left for some purpose in said books; that many of the charges in the account as made up by the said Coyle, rest upon no day-book entries whatever; that others are altered and changed from what they originally were, and that most of them were made by the said Coyle, when he had exclusive possession of said books, shortly before the dissolution of the late firm of Wills & Coyle, and without the knowledge or consent of this respondent; that as soon as this respondent became aware of such improper entries, he took possession of said books, and has always refused, and still doth refuse to recognize the entries

[Wills et al. *v.* Kane.]

thus made, as evidence against him; that such and no other is the character of the entries sought to be made by the plaintiff, through the action of this court, *prima facie* evidence in support of his claim against this respondent; that the application now made to the discretion of this court, is an attempt to accomplish indirectly, what cannot be accomplished directly; *that is to* say, to fix a *joint* liability on this respondent, together with John Coyle, by the kind of evidence before stated; evidence which this court must see at once, is much less worthy of credit than the oral testimony of the said Coyle, given in open court, under the sanction of an oath; which later description of evidence, in a case of this kind, the law, on well settled principles, refuses either to hear or credit. ·

"This respondent further answering, says: that there never was any article of co-partnership between the respondent and John Coyle; and that as to the power of attorney from plaintiff to John Coyle, it is not now, and never was, in the possession of this respondent, to the best of his knowledge and belief.                                            JOHN A. WILLS.

"Affirmed and subscribed before me, this 4th day of November, A. D., 1852.                          GEO. S. HAYS, Proth'y."

Nov. 15, 1852. This case coming on to be heard. on the rule of Oct. 16, 1852, was argued by counsel. On consideration thereof, the court made the said rule absolute.

Nov. 16, 1852. Jury called and sworn, and defendants' having failed to produce on the trial the books and papers, designated in the order of court of Oct. 16, 1852, which said rule was made absolute on the 15th of Nov., or to show sufficient cause why the same are not produced, the plaintiff moved that the jury be discharged, and that judgment be entered in favor of the plaintiff, and against the defendant by default, under the Act of 27th Feb., 1798. After argument by counsel, the court, WILLIAMS, J., entered the following judgment, viz: "And now, to wit, Nov. 16, 1852, it is considered by the court, that the defendants have not sufficiently complied with the order of the court, calling on them to produce books and writings, and the court is not satisfied with the affidavit of John A. Wills, one of· the defendants, to excuse him for non-compliance; and therefore the court awards judgment to the plaintiff by default, and discharges the present jury from the said cause."

Nov. 17, 1852. The judgment was liquidated at $3309.25, by order of the attorney to the prothonotary. Defendants excepted to the entry of judgment as aforesaid, and to the manner of liquidating the same, and assigned the same for error.

[Wills et al *v.* Kane.]

*C. Shaler & Co.*, for plaintiff in error:—Three questions arise under the Act of Assembly:—

1. Can the plaintiff obtain judgment in default of the production of papers, &c., unless he first gives notice of his intention to ask the court to enforce the penalty? Upon this point, see 3 Washington, C. C. R. 386; Act of Congress, 24th Sept., 1789; *Murphy* v. *Morris*, 2 Miles, 60.

2. The defendants allege that the plaintiff was not entitled to a judgment by default, because he has not stated in his affidavit, the part of the plaintiff's demand to which the books, papers, &c., are applicable. This is rendered a pre-requisite by the act to obtain a judgment under its provisions—it is not in the plaintiff's affidavit anywhere alleged "*that the books or papers will apply to any part of the plaintiff's demand.*" *McDermot* v. *United States Insurance Company*, 1 S. & R. 557; Act of 24th Feb., 1847; Dunlop, 968.

3. The judgment by default was but interlocutory, and after obtaining it, the plaintiff was bound to resort to a jury to liquidate his damages. Instead of doing this, he entered an order to liquidate under the rules of court. *Cowles* v. *Cowles*, 2 Pa. R. 143; *Wright* v. *Crane*, 13 S. & R. 447; *Tattle* v. *Mechanics and Tradesmen's Loan Company*, 6 Wh. 216; 1 Troubat & Haley, 353.

*Hamilton*, for defendant in error, referred to *McNair* v. *Wilkins*, 3 Wh. 551; *Hampton* v. *Matthews*, 2 H. 105.

The opinion of the court was delivered October 12, 1853, by
Woodward, J.—This was an action of assumpsit, by Kane against Wills & Coyle, for the recovery of $3100, with interest, from the 1st October, 1851, which the plaintiff, in an affidavit filed with his præcipe, alleged the defendants had collected for his use. The narr. was in three counts: 1st, for money had and received; 2d, for money lent; 3d, for money found due on an account stated. Coyle made no defence, but Wills took defence to the whole of the plaintiff's claim, except the sum of $174.05, which he admitted to be due, and for which he tendered the plaintiff a judgment, or the money.

On the 16th October, 1852, the plaintiff's counsel moved the court for a rule, which was granted, on the defendants, to show cause why they should not produce on the trial of the cause, the books and writings mentioned in the following affidavit, which they filed:

"*Allegheny County, ss.*—And now, to wit: March 27, 1852, Michael Kane, Jr., the plaintiff in the above action, saith that the defendants in the above action have certain books and writings in their possession or power, which contain evidence perti-

[Wills et al. *v.* Kane.]

nent to the issue in the above pending action, which said books and writings they have refused to produce, and still refuse to produce, although notified and requested so to do.  That the said books and papers are the books and papers of the late partnership, or joint business of the defendants, to wit, their dockets, day-books, journals, ledgers, cash-books, blank-books, adventure-books, or books containing adventure accounts, the article of co-partnership between the defendants, and also the original letter of attorney, from the plaintiff to the defendants, or one of them, dated in the early part of the year 1849, and that the said books and writings are exclusively in the possession or power of one or both of the defendants.  In answer to this rule, Mr. Wills put in an affidavit, denying that the books of the late firm of Wills & Coyle contained any evidence pertinent to this issue, and alleging that fraudulent entries had been made in them by his late partner, shortly before the dissolution, without his knowledge or consent, and with a view of fixing on him a joint liability with the said Coyle for the money of the plaintiff.  He admitted that he had taken possession of the books as soon as he discovered the improper entries, but denied that there was any article of co-partnership between him and Coyle, or that the power of attorney from the plaintiff to Coyle, was now or ever had been in his possession."

On the 15th November, 1852, the court, after hearing the parties, made the rule absolute, and the next day, the cause coming on for trial, a jury was called and sworn, when the plaintiff's counsel demanded the production of the books and papers mentioned in the plaintiff's affidavit of 27th March, 1852, to which the defendants replied, that they "would not produce the said books and papers, and declined replying to any interrogatories touching the same."  The court thereupon decided that the defendants had not sufficiently complied with the order of the court, calling on them to produce books and writings, and that the affidavit of John A. Wills did not excuse him for non-compliance, " and therefore the court award judgment to the plaintiff by default, and discharge the present jury from the said cause."

The regularity of this judgment, is the subject of the first three assignments of error.

At common law, the only way in which one party to an issue could avail himself of documentary evidence in possession of the other, was by giving him notice to produce it on the trial, and if he failed, by proving copies or contents.  But this was an imperfect remedy, for in many cases, neither copies of books and papers, nor a witness to prove their contents, could be procured ; and then all that was left to the party seeking the truth, against him whose interest would exclude it, was to go into

[Wills et al. *v.* Kane.]

chancery, and by a dilatory proceeding for discovery, compel a production of evidence there, to be used on the trial in a court of law.    It was a striking instance of judicial absurdity, that in the same cause, between the same parties, and in the examination of the same facts, justice must be delayed, if not completely balked on one side of Westminster Hall, for the want of power to compel the production of evidence, which could not be withheld, when demanded on the other side.    Many of the best judges in England felt the inconvenience of such disjunction between the powers of courts of law and equity, and lamented the want of compulsory power in the former, for the production of books and papers belonging to the parties.    Our act of assembly of 27th February, 1798, was designed to supply this power to our courts of law, and because it is a remedial statute, framed to aid in the attainment of substantial justice, and intended to furnish a bill of discovery to courts, which did not possess that remedy, it ought to be enforced freely and decidedly, and in its true spirit.    *Cottrell* v. *Warren*, 6 H. 488. There is no hardship in compelling a party in possession of pertinent evidence, to produce it in court, or give a satisfactory reason for not doing so.    The interests of justice which require this, are superior to the passions, or even the interest of parties, and these should not be permitted to cloud, much less suppress the light which is needed to guide the course of justice.    Still, however, in a proceeding to compel the production of books and papers, the statute must be followed, for the rule is, that whoever seeks the benefit of a statutory remedy, must bring his case within its substantial provisions.

The main position assumed in argument against this judgment is, that the plaintiff did not state in his affidavit the part of his demand to which the books and papers were applicable.    The proper time to have urged this objection, was on the hearing of the rule.    In *Tutle* v. *The Loan Company*, 6 Wh. 217, it was said by Sergeant, J., that it is when the rule is about being granted, that the party should make his objections, if he relies on them; and if they are valid, the rule will be refused or modified according to the circumstances.    And see *McNair* v. *Wilkins*, 3 Wh. 551.    Not a syllable of this specific objection was made at that time, but the defendant contented himself, according to the bill of exception, with objecting to the making the rule absolute, " on the ground that neither the affidavit on which the said rule was founded, nor the rule, nor notice thereof, were in conformity with the requisition of the act of assembly, inasmuch as no good or sufficient cause, as required by the act, was stated in the same, and nothing appeared in the plaintiff's narr., or the pleadings in the case, to show that he was entitled to call upon the defendants for the production of the books and docu-

[Wills et al. *v.* Kane.]

ments aforesaid." These were very general objections—comprehensive enough, to be sure, to embrace the complaint now specified, because too comprehensive. Exceptions and errors should always be specific, so as to bring the mind of the court to the very point in contest. Our rule is to disregard general assignments, whether of errors or exceptions, and never to reverse a judgment, except on ground that was distinctly presented to the court below. Had the defendant, on the hearing of the rule, specified in what manner the affidavit of the plaintiff was defective, it might have been amended, or a supplemental affidavit filed, or the court might have modified their order; but, urging a general want of conformity to the statute in the court below, and reversing the specific infirmity to be pointed out here, was calculated, doubtless not intended, to secure an advantage to which the defendants had no right whatever. We might for these reasons, with perfect propriety dismiss this special objection of the defendants, without further notice, and say, in answer to the general grounds alleged in the bill of exceptions, that according to all the adjudged cases in Pennsylvania, the affidavit, notice, and rule, were in substantial conformity to the act of assembly : but, as the point taken, raises an important question of practice, dependant on the construction of the act of assembly, we will proceed to consider it. The act is in these words : "The Supreme Court, and several courts of Common Pleas of this State, shall have power in any action defending before them, on motion, and upon good and sufficient cause shown, by affidavit or affirmation, and due notice thereof given, to require the parties or either of them, to produce books or writings in their possession or power, which contain evidence pertinent to the issue. And if either party shall fail to comply with such order, and to produce such books or writings, or to satisfy said courts why the same is not in the party's power so to do, it shall be lawful for the said courts, if the parties so refusing shall be a plaintiff, to give judgment for the defendant, as in cases of non suit, and if a defendant, to give judgment against him by default, as far as relates to such parts of the plaintiff or plaintiffs' demand, or defendant or defendants' defence, to which the books or papers of the party are alleged to apply." The authority conferred on the courts named, is to require the production of books and papers in the possession or power of either of the parties to pending litigation, which contain evidence pertinent to the issue, or else to satisfy the court why the same is not in the party's power so to do : and, to call this authority into exercise, good and sufficient cause by affidavit or affirmation, must be shown. The affidavit and notice must describe the books and papers with reasonable certainty—must allege that they are, or at least that the affiant verily believes

them to be in the possession or power of the party—and that they contain evidence pertinent to the issue. These things sworn to, constitute the "good and sufficient cause" that authorizes the court to make the rule, and these are all the matters which the act requires should appear in the primary affidavit. *Rose* v. *King*, 5 S. & R. 241; *Wright* v. *Crane*, 13 Id. 454; *Cowles* v. *Cowles*, 2 Penna. R. 142. When the party ruled has been heard, and the rule has been made absolute, if he fail both to produce the books and papers, and to account satisfactorily for not doing so, the court renders a judgment of non suit, if against the plaintiff, or a judgment by default, if the defendant was the party ruled, "as far as relates to such part of the plaintiff or plaintiffs' demand, or the defendant or defendants' defence, to which the books or papers of the party are *alleged* to apply." Now, to argue that this allegation must be in the primary affidavit, is to misunderstand the object of the act, which is, not to end the controversy, but to discover testimony. When the plaintiff makes the affidavit, he is not bound to anticipate that the defendant will disobey the rule of the court and incur the penalty. He has a right, indeed it is necessary for him to presume, that if he lay the requisite ground, the evidence will be forthcoming; and to require him to swear before he has seen the evidence, or heard the explanations of the defendant, to what part of the items or matters in controversy that evidence would apply, is to lay on him more than the statute imposes, more than has ever been adjudged to be necessary, and that which would in many instances defeat the objects and purposes of the enactment. The judgment to be rendered, is a judgment by default, the amount of which must be liquidated as in other cases of judgment by default; but, when the court is about to render the judgment, if they see from the pleadings of the parties that the plaintiff's demand, or the defendant's defence, consists of items, or distinct and separate causes of action, on ground of partial defence, they may require the plaintiff to allege to which of the claims in controversy the evidence sought, is applicable. And, doubtless, they may require this allegation to be made under oath, in the manner prescribed by the act of assembly of 24th February, 1847, giving arbitrators power in certain cases, to require the production of books and papers. Dunlop's Digest. The judgment by default in such cases is to be limited to the matters thus alleged, but as this allegation is designed to guide the conscience of the court, in measuring out the penalty prescribed by the act, it need not be made until the court wants it; and it need not be made at all where the plaintiff's case consists of a single cause of action, and the defence rests simply on a denial of joint liability for it. When the action is founded on several distinct claims, as for

example, an action for debt on bonds, notes, and book accounts, or when the defence sets up separate and distinct matters, it is quite obvious that books and papers may be very pertinent evidence, as to *some* of the grounds of action or defence, whilst they have no relevancy whatever to other subjects of contest in that issue. This clause in the act was intended to enable the court to distinguish the precise extent to which the plaintiff was damaged by the defendant's non-compliance with the rule. But where, as in the case before us, the plaintiff sues for a specific sum of money, due him by reason of a single contract or transaction, and files with his præcipe an affidavit setting forth the precise amount of his claim, his case is sufficiently "*alleged*" before the court. Nor is it material that the narr. contains several counts, since they are all on the same cause of action. So far from disputing the identity or individuality of the plaintiff's claim, Mr. Wills, the only real defendant in this proceeding, states it, and admits it under oath in his counter-affidavit, where he says that "*the question in the above case, is simply the liability of this respondent, as a member of the late firm of Wills & Coyle, for a sum of money*, viz., the sum of *three thousand one hundred dollars, or thereabouts.*" The court thus had it from both sides, under oath, that the plaintiff's claim was that one ascertained sum of money; and from the defendant, that the only defence was, that he was not liable for it as the partner of Coyle. This was the issue, and the whole of it, and when the plaintiff, in his affidavit of March, 1852, swore that the books and papers in the defendant's possession, contained evidence pertinent to *that* issue, what need was there of more allegations in this cause? If the evidence was pertinent at all, it was pertinent to the whole claim of the plaintiff, which was one entire thing, a round sum of numbered money. The defendant, failing to produce the books, or to satisfy the court for their non-production, it became their duty to render judgment against him by default; not for a part of the plaintiff's demand, but simply a judgment by default; which, according to the most necessary implications, must be considered a judgment for the whole. As to the matters alleged in the counter-affidavit of the defendant, we think the court was entirely right in treating them as insufficient to justify the withholding of the books. If the books *presented the fraudulent* appearances alleged, they would have borne their condemnation on their face, and could not have injured the defendant. But he ought to have produced them. Due notice had been given him; they were in his possession, and they were alleged to be pertinent. Under such circumstances he might have foreseen the consequences of not producing them would be as disastrous as any that could follow their production. And it was for the court and jury, and not

for the defendant, to decide, what degree of credit was due to the
books.   He says in his affidavit that they were much less worthy
of credit than the oral testimony of Coyle, which the court
would decline to receive.   This might have been a good reason
to urge against the *effect* of the evidence to be derived from
the books, but was no reason whatever, for not producing them.
It was, in fact, assuming to decide the whole question of evi-
dence, and asking the court to adopt for their judgment the con-
clusions of the defendant.

Another position taken by the defendant is, that he should
have had notice of the plaintiff's intention to move for judg-
ment by default, and for this the case of *Bas* v. *Steele*, 3 Wash.
C. C. R., is relied on.   That case was ruled upon the 15th sec-
tion of the Judiciary Act of the United States, of 1789, which
provides for a different practice from that which has grown up
under our Act of Assembly.   We bring the party in on a rule to
show cause, which is precedent to the trial, and his reasons for
not producing the books are then heard and considered.   If the
rule be made absolute, he is fixed to produce the books at the
appointed time, or satisfy the court for not doing so, and, of
course, has record notice of the rights of the other party, and of
his own duties and liabilities.   The rule in this instance, granted
on the 16th October, 1852, called on the defendant to show cause
why he should not produce the books and writings on the *trial of
the cause.*   On the 15th November, 1852, he showed cause,
which not being satisfactory, the court made the rule absolute.
The trial came on the next day; and then, on demand for the
books, the defendant refused to produce them, and declined
replying to any interrogations concerning them.   Now, when
would he have had the plaintiff give notice of his intention to
move for judgment?   Certainly not before the trial, because,
until that time, the plaintiff could not know the books would
not be produced; and until he knew this, he could not intend
to move for judgment.   In *Wright* v. *Crane*, 13 S. & R. 447, a
case which, as to the defence set up, resembles this very much,
the rule was, as here, to produce the papers *at the trial,* and
Tilghman, C. J., said it could not appear that they would not be
produced, until they were called for by the plaintiff, after the
jury was sworn, and in the course of the trial.   In that situ-
ation, nothing could be done but to discharge the jury, and
enter judgment against the defendant by default.

However proper, under the Act of Congress, notice of the
motion for judgment may be, it is apparent there is no room
for it, or need of it, according to the established practice under
our Act of Assembly.   Still another objection to this judgment
is, that it was entered before the jury were dismissed.   The
record shows that the entry of judgment and the discharge of the

[Wills et al. *v.* Kane.]

jury, were contemporaneous acts. If they were not, we are without information which was done first, and it is quite immaterial.

Then, as to the liquidation of the judgment by default, the judgment authorized by the Act of 1798 is interlocutory, and the damages may be assessed upon a writ of inquiry; or, where it is mere matter of arithmetical calculation, by reference to the prothonotary, as in other judgments by default. The practice in this regard, is generally regulated by rules of court, which every court of record has an inherent power to make for the transaction of its business, so they do not contravene the law of the land. *Wilkins* v. *Anderson,* 1 J. 405. The District Court in which this judgment was rendered, has established a series of rules, in reference to the liquidation of judgments by default, the 73d of which is in these words:—"In all judgments by default, when the plaintiff has filed an affidavit of the amount of his claim, the judgment shall be for that amount. In all other cases, the prothonotary shall liquidate the amount, when from the nature of the action it may be done, without a jury of inquiry." This action was of that nature, and, moreover, the plaintiff had filed an affidavit of the amount of his claim, which was verified also, as we have seen, by the affidavit put in by the defendant. This case came, therefore, within the very word of the rule, and the judgment was properly liquidated by the prothonotary.

We have now gone over the ground of objection to this judgment, and have found nothing that would justify us in disturbing it, and therefore it is affirmed.


Mr. Justice KNOX delivered the following opinion :—

I cannot concur in the opinion of the majority of this court. My view of the case is this : Where a rule is entered upon a party defendant to produce books and papers, and he refuses or neglects to do so, the plaintiff is entitled to a judgment. If the affidavit is specific as to the sum which the books or papers will prove, the judgment is conclusive as to such amount, and if this is less than the whole demand, the case may go to trial for the residue; or perhaps this may be ascertained by writ of inquiry. If the affidavit is general, simply stating that the books or papers are pertinent to the issue, (as in this case,) upon failure of production, the plaintiff is entitled to a judgment, but the amount must be ascertained by writ of inquiry.

The rule of court which authorizes the prothonotary to liquidate judgments upon a certain class of cases, does not apply to a judgment entered under the Act of Assembly to compel the production of books and papers. It is true, the rule says, that "in all judgments entered by default," &c., &c., but this refers to judgments obtained by default, under the rule of court. If

[Wills et al. *v.* Kane.]

the contrary construction prevails, the effect is this: that if one swears that certain books, or papers, in the possession of the other party, will prove the one half of his claim, (stating the amount,) and a rule entered in his behalf, is made absolute, his judgment is only conclusive as to the sum stated; but if he simply sets forth, in his affidavit, that the books, or papers, are pertinent to the issue, his judgment, by the aid of a rule of court, becomes absolute for the whole claim. No rule of court can be inconsistent with an act of assembly; but such is substantially its effect, if the judgment, in a case like the present, is to extend beyond the penalty mentioned in the statute.

I am for affirming the judgment, and for setting aside all subsequent proceedings.

Mr. Justice BLACK dissented, and delivered the following opinion :—

The Act of Assembly was made to compel the production of books and papers pertinent to the issue, and in the power of a party disposed to withhold them. The manner in which notice shall be given, is prescribed, and the penalty for refusing, (if the papers demanded are in the hands of the defendant,) is declared to be the entering of a judgment against him in favor of the plaintiff, for so much as it is alleged that the papers in question apply to.

In this case, the plaintiff has nowhere alleged, in any form or shape, that the books or papers relate to any particular part of his claim; nor does he say that they apply to the whole of it. It is merely asserted that they are pertinent to the issue. They would be pertinent to the issue, if they would prove five dollars of the claim. Yet a judgment was entered in the District Court, and is about to be confirmed here, for more than three thousand dollars.

I will not deny, that a good deal of ingenious reasoning, from remote circumstances, may enable us, (or at least some of us,) to guess that this evidence, if it had been produced, would have applied to the whole claim. But when we reflect how easy it is for a plaintiff to say, in his affidavit, whether the evidence applies to the whole of his claim, or a part; and if to a part, how much, I think very few will think our system of jurisprudence is much improved, by allowing the party to stick in the bark of the statute, and claim a judgment for the whole debt mentioned in the declaration, on an affidavit like this. It may be asked, why does not the defendant produce the papers? I answer, that I know of no excuse in justification for him. I admit the value of the presumption, which arises in *odium spoliationes;* but why did not the plaintiff express his *belief* of the sum which the papers would enable him

to establish. His withholding this, was every whit as bad, as the other refusing the papers. This is a proceeding, which this court has repeatedly called highly penal. The present judgment inflicts upon the defendant a penalty, which may be a thousand times as great as the statute denounces for his offence. Whatever, therefore, may be his *status in curia,* I believe he has been smitten, not only without law, but against law.

The injustice which may be wrought in this particular case, is not the worst of it. If we would say, that in every such case as this, the plaintiff must specifically state in his affidavit, how much he believes the evidence will cover, we will have a plain and simple system, just in its principle, easily complied with by both parties, and administered without difficulty by the courts; but otherwise, we encourage plaintiffs to make their allegations as vague as possible; and we encourage defendants to refuse compliance with such rules; for if it is to be all guess work, the guess may be in favor of the defendant, as well as against him.

I am clear that the judgment ought to be reversed.