JANE W. STOUT et al., executors of Lewis Stout,

v.

FITZ RANDOLPH STOUT et al.

1. The testator gave to his wife the interest, dividends and income arising from the sum of $50,000, and then added: "After the death of my said wife, the said principal fund of $50,000, and the securities and properties which may constitute the same, shall form and be a part of my estate for distribution and disposal as hereinafter provided." He gave to a daughter the interest arising from the "one-third part of the residue of all my [his] estate, real and personal," and in a similar manner gave the interest of the other two-thirds of the said residue, and finally disposed of all the principal out of which the interest for his said daughter and the other two legatees for life were to receive their interest.—*Held*, that the $50,000 was included in the residue, and was effectually disposed of.

2. The testator gave the interest of said one-third to his daughter, as above mentioned, for her lifetime, and after her death to her child, or to her children, so long as they should severally live; and at their death he gave the principal to the next of kin of said deceased child, in every case, in such share and manner as if said child was the absolute owner and should die intestate. At the death of the testator, his daughter had one child living.—*Held*, that the gift to the child, or children (should others be born), was valid, but that the gift to her grandchildren was void, being too remote.

3. A legacy in payment of a debt, or to a minor child, or to a child *in loco parentis*, or an annuity, or to the residuary legatee, where the interest is payable to him for life and the principal goes over, or where there is some special equity in the case, or where by following the general rule injustice would be done, bears interest from the death of the testator.

4. In this case, the widow was permitted, by the will, to select securities to the amount of the principal sum, the interest of which she was given.—*Held*, that so far as she made such selection, she was entitled to all the interest accruing thereon from the death of the testator, and that so far as she made no selection, her legacy fell under the general rule as to interest.

On bill for the construction of the will of said deceased.

*Messrs. Woodbridge Strong & Son,* for complainants.

*Mr. A. V. Schenck,* for defendants.

BIRD, V. C.

The testator directed his debts to be paid, and gave $10,000 to his wife absolutely, and also the interest, income and dividends arising on the principal sum of $50,000, so long as she should live, giving her permission to select from the securities that he might leave to that amount. And he then provides :

"After the death of my said wife, the said principal fund of $50,000, and the securities and properties which may constitute the same, shall form and be a part of my estate, for distribution and disposal, as hereinafter provided and made."

He gave to his three grandchildren, Lewis S., Jane S. and Peter E. Van Antwerp, the interest divided and income arising from the principal sum of $25,000 (by codicil made $10,000), share and share alike, adding :

"At the death of my said grandchildren, severally, I give and bequeath of the said principal sum of $25,000 (by codicil $10,000), in equal shares, and should die in New Jersey intestate, and reside in said State."

He gave to his daughter, Mrs. Dunham, a house and lot, and added :

"In addition to what I have heretofore given to my daughter, Elizabeth W. Dunham, I give, devise and bequeath to her the interest and dividend and income arising from the equal one-third part of the residue of all my estate, real and personal, and of every nature and kind wheresoever situate and being, to be paid to her as received, as long as she shall live."

He then gave the said—

"Interest, dividend and income of said residue to her child, if she shall leave but one child her surviving, and to her children, share and share alike, if she shall leave more than one surviving her, to be paid to them if there shall be more than one, and to it if there shall be but one, as the same shall be received, so long as they shall severally live. And as the children of the said Elizabeth W. Dunham shall severally die, I give, devise and bequeath of the principal of the said one-third of the said residue of my estate, and of the investments thereof, to the next of kin of said deceased child, in every case, in such share and manner as if the said children were the absolute owners of the said one-third of said residue, in equal shares, and should die intestate in New Jersey, leaving the same, subject to the laws of descent and of distribution of said estate"

He then makes a gift of the interest of one-third of said residue to his son, Fitz Randolph Stout, in the same manner that he gave one-third of said interest to Mrs. Dunham, but adding to this gift these words :

"Fitz deducting therefrom, however, the aggregate amount, without interest, of all advancements I shall make to him, or for his account, at the time of my decease, as the same shall be ascertained from charges against him that may be found at my death."

Then the other one-third of said residue is given to the testator's daughter, Lucetta.

He then directs his executors to hold the said $50,000 and $10,000,

"The avails of which my said wife and the children of my deceased daughter, Phebe R. Van Antwerp, are to receive as hereinbefore provided; and the three shares of the residue of my estate, the avails of which my daughter, Elizabeth W. Dunham, and her children, and my son, Fitz Randolph Stout, are severally to receive as herein provided, until such time as a final distribution of the said principal money and share shall be made as hereinbefore directed."

(1) The grandchildren, the Van Antwerps, insist that the testator has died intestate as to the remainder of the said $50,000, the interest of which is given to his wife during her life. Their counsel, with great confidence, insists that it does not pass by any of the subsequent provisions of the will. He admits, however, that it was the intention of the testator to dispose of it as residue, saying that the testator, in a separate clause, when he says " it shall form and be a part of my estate for distribution as hereinafter provided and made," undoubtedly meant to dispose of the whole balance of his estate as residue, but is persuaded that there is no residuary clause embracing that principal sum.

I am satisfied that there is no want of certainty on this point. It is very plain to my mind that the testator fully carried out his declared intentions. The residue being what was remaining after all the former gifts, the testator gave the interest of the equal one-third part of the residue of his estate, real and personal, of every nature and kind wheresoever situated, to each of his three

31

children, and then in each case makes disposition of the principal, from which such interest is drawn, although it may not be effectual as to one. Besides the very plain language of the gift, the will finally declares that the executors shall hold the said $50,000, and $10,000, in trust, and the said three shares, until such time as a final distribution of the said principal money and shares shall be made, as thereinbefore directed.

The argument in favor of the next of kin is, that the testator first set apart the $50,000 and $10,000, and then gave the interest thereof, without more; and that he thereby leaves the principal funds, making no reference to them again, but proceeds to dispose of the balance of his estate, exclusive of these large sums; and that when he referred to the " rest " and " residue," he only had in mind all the estate exclusive of these sums.

I disagree with this view in every particular. I cannot read the will, in whole or in part, and find any peg to hang a doubt upon. But wills are to be taken as a whole, as one act. The mind of the author is learned from the whole instrument.

In the case before me, the testator expressly declares that the said $50,000 shall be a part of the estate for distribution as thereinafter mentioned. That declaration of itself casts that sum into the lot with any other fund that may be disposed of afterwards. I am unable to reach any other conclusion.

But this is not all. As has been intimated, when the testator afterwards divides his estate into the three shares for distribution amongst his children, he uses the very significant and unmistakable language, " all the rest and residue of my estate, real and personal, and of every nature and kind."

If these expressions, together with the last clause of this will above quoted, can be read so as to convince any unprejudiced mind that the whole of the testator's estate was not embraced therein, then I shall not despair of intellectual skill accomplishing anything in opposition to the truth and to reason. For authority see *Clark* v. *Richards, 6 C. E. Gr. 361.* There are two cases in our reports, not referred to by counsel, upon which I should have been glad to have heard from them. I refer to *Sinnickson* v. *Snitcher, 2 Gr. 53, 63,* and *Birdsall* v. *Applegate,*

Stout v. Stout.

*Spen. 244;* and also *Mahorner* v. *Hooe, 9 Sm. & Marsh. 247 (48 Am. Dec. 706).* These cases are illustrations of the views of counsel for the defendants as to this case, but the facts are different. In those cases the court concluded that the testator did not mean to include a certain portion of his estate when he disposed of the residue, being of the opinion that he only had reference to a particular fund or parcel with which he had just been dealing and out of which he had been making provisions for his children. But the language of the chief-justice, in the first case, should be noted, when he says, "I do not say that that clause will not carry such reversionary interest if there be one." Besides these cases being essentially different from the present one, they are more in harmony with the older authorities on the force of the words used in residuary bequests. *Marquis of Hertford* v. *Lowther, 7 Beav. 1 ; Newman* v. *Newman, 26 Beav. 220 ; Barnaby* v. *Tassell, L. R. (11 Eq.) 363.* But more recent expressions of the courts show an evident disposition of the court to give to the expression in residuary clauses the widest possible construction. *Chapman* v. *Chapman, L. R. (4 Ch. Div.) 800 ; Mullally* v. *Walsh, L. R. (6 Ir. Eq.) 227; S. C., (6 Ir. C. L.) 314.* See, also, *Kendall* v. *Kendall, 4 Russ. 360 ; Fisher* v. *Hepburn, 14 Beav. 626 ; Patterson* v. *Huddart, 17 Beav. 210 ; Ellis* v. *Selby, 7 Sim. 352 ; Swinfen* v. *Swinfen, 29 Beav. 207.* Particular words or phrases will not control general residuary gifts, when, if such construction were allowed, intestacy would follow. *Arnold* v. *Arnold, 2 Myl. & K. 365 ; Swinfen* v. *Swinfen, 29 Beav. 207 ; Campbell* v. *Prescott, 15 Ves. 500 ; Michell* v. *Michell, 5 Madd. 69 ; Martin* v. *Glover, 1 Coll. 269; Parker* v. *Marchant, 1 Y. & C. C. C. 290 ; Nugee* v. *Chapman, 29 Beav. 290 ; Hodgson* v. *Jex, L. R. (2 Ch. Div.) 122.*

Since the argument of this case my attention has been called to the case of *Graydon* v. *Graydon,* found in *8 C. E. Gr. 229,* in which the Chancellor decided that a gift of the residue only included that portion of the testator's estate about which he was then speaking and out of which he had just made a gift of the interest for life for the legatee. That case, like many others, sustains the views of counsel for the defendants, but it seems to me

to be so wholly unlike the case in hand as in no sense to be controlling.

The rule which is more particularly applicable to this case is thus expressed, in *Sorrey* v. *Bright, 1 Dev. & Bat. Eq. 113 (28 Am. Dec. 584*), "Of an express general gift of the residue the rule is well settled, that it comprehends all the personalty which is not otherwise effectually disposed of by the will, whether it be acquired after making of the will, or whether it fall in by the lapse of a legacy, or by the particular gift or the thing being illegal and void. *Durour* v. *Motteux, 1 Ves. Sr. 321* ; *Cambridge* v. *Rous, 8 Ves. 12* ; *Dawson* v. *Clark, 15 Ves. 410; Bland* v. *Lamb, 2 Jac. & Walk. 399*. In the last case Lord ~Eldon says, that to take a case out of this general rule, very special words are necessary, showing the intent to be clear, that particular parts of the estate should not pass under the residuary clause. The rule itself is not founded upon the actual intention of the testator to include everything; for often, nay generally, there is probably a contrary intention, as every man must be supposed to consider each particular disposition of his will valid, and to expect it to take effect. But the rule is an inference from the presumed general intention not to die intestate as to anything, when there is a gift of the general residue. Doubtless it may be restricted by the special wording of the will. If the residue given is partial, that is, of a particular fund, the rule has no application.

The case of *Read* v. *Payne, 3 Call ( Va.) 225 (2 Am. Dec. 550*), is quite like the present, in that it first carves a life interest out of what was, in the law, held as personalty, and then gives the residue of the estate without further mention of the assets out of which life estate is given. And it was held, that, where a testator bequeathed to his wife certain slaves during her natural life, and after specific devises of land and slaves, to his two sons, devised as follows : "All the rest of my estate, I leave at the time of my death, I desire may be equally divided between my beloved wife and my dear sons and their heirs forever," this residuary clause vested in the wife and son equally the reversion in the slaves given to her for life. *Donohoo* v. *Lea, 1 Swan ( Tenn.)*

*119 (55 Am. Dec. 725); Drayton* v. *Rose, 7 Rich. Eq. 328 (64 Am. Dec. 731).*

(2) It is also claimed that the provision of said will, which purports to secure to the daughter, Mrs. Dunham, the interest of one-third, is void, in whole or in part, because it creates a perpetuity, since she, having one child, though a widow now, may again marry and have other children who would come within the meaning of the language of the will, although not in being at her death. It will be seen that the interest of the one-third is given to Mrs. Dunham during her lifetime; at her death the interest of the same sum is given to the child of Mrs. Dunham, if she shall have but one, and to her children, share and share alike, if she shall have more than one her surviving. To this point the rule against perpetuities is not interfered with or violated. But the will proceeds to say that as the said children of Mrs. Dunham shall severally die, the said principal of the said one-third is given to the next of the kin of the one so dying. This is said to be void, because it is in conflict with the rule against perpetuities; that is, the gift cannot, or may not, take effect during the period of the life of any person or persons in being and twenty-one years after. For, at the death of the testator, Mrs. Dunham was living and then had a daughter living, and, since she may have other children, who are included in the terms of the gift, and to whose next of kin the remainder is given, there is a possibility of such interest not vesting within the lifetime of Mrs. Dunham or of her daughter, now living, and twenty-one years after, because should Mrs. Dunham have other children, they may live for a longer period than the twenty-one years after the death of Mrs. Dunham and the daughter now in being, and so make the gift contrary to the rule. *Lewis on Perpetuities 455* states the rule thus :

"Suppose a testator bequeaths personalty to A for life, and, after his decease, to such of the children of A as shall attain twenty-five. The question being, whether this Executory limitation to the children is, or is not, too remote, it is to be inquired, whether, in the very nature of the limitation, that rule of law is satisfied, which requires, that every future interest in property be so limited, as that it must necessarily vest, or fail of effect, within the space of one or more life or lives in being, and twenty-one years. And the

answer to this inquiry being, that A may have a child, born just before, or not until after his decease, and who could not, therefore, attain the specified age, within twenty-one years from the expiration of a life in being (viz., that of A), but who, nevertheless, is included in the class entitled under the executory gift, such gift is void, as possibly postponing the vesting of the future interests for too remote a period."

This rule renders inoperative that portion of the gift in the clause last referred to, which intends that the grandchildren of Mrs. Dunham shall have the principal, the interest of which is given to her for life. As above suggested, Mrs. Dunham may have other children, and such children may survive her more than twenty-one years, in which case, the vesting of the estate in their next of kin under the will, would be too remote. So far, then, as the next of the kin are provided for, the will is void.

It has been suggested that this rule is not to be the guide in this case, because Mrs. Dunham has now reached the age of fifty, and that being so, she is presumed to have passed beyond the age of child-bearing; so that the estate must vest within the period of twenty-one years after the death of Mrs. Dunham and her child now in being. But, as I understand the principle of the rule, the court is not to seek for presumptions, but for possibilities. If there be a possibility of birth which may change or disturb the order of things as they exist at the time of the death of the testator, and so make the vesting legally too remote, the bequest cannot stand. See 1 Jar. on Wills 233. That the possibility of childbirth is not removed at the age of fifty seems to be clear from all of the authorities. See In re Millner's Estate, L. R. (14 Eq.) 245; In re Widdow's Trust, L. R. (11 Eq.) 408; Edwards v. Tuck, 23 Beav. 268; Leng v. Hodges, 1 Jac. 585; Lyddon v. Ellison, 19 Beav. 565.

(3) But is there any further conflict between the provision of this clause and the doctrine of perpetuities? The counsel for complainants seemed inclined to believe that the doctrine extends to any of the children of Mrs. Dunham who might be born after the death of the testator; but insisted that, while they might be cut off, the child who was living at the testator's death could enjoy the bequest. But the counsel for the defendants goes so

Stout *v.* Stout.

far as to claim that, not only are all after-born children cut off, but that the child living at the death of the testator is also. This is claimed to follow, because the gift is to a *class*, and that the whole must fail, if part does, and this is the result of the authorities. *Lewis on Perpetuities 456; 1 Jar. on Wills 230, 231.*

But does the gift fail because it is to a class, that is, to all the children of Mrs. Dunham? I think not. The gift of the interest of the fund to them during their lives is not an impairment of the rule under consideration.

The entire period contemplated by the rule, has not, in this branch of the gift, been exceeded. The lives in being, at the death of the testator, were Mrs. Dunham and her daughter. The branch of the gift which we are now considering, is that to the child of Mrs. Dunham, if she has but one, and to her children, if she have more than one. Now, therefore, not to come in conflict with the rule, all of the children must be born during the lifetime of Mrs. Dunham, and within twenty-one years after, and all of the legatees contemplated must be born within that period, because they must all be born of the body of Mrs. Dunham, so that the possibility which is supposed to stand in the way is excluded. It will be seen that the case is in no respect like any of the cases which were referred to on the hearing, in which the legatee, whether of a class or not, was prevented from taking, until a period beyond its birth, or until the happening of some event, so as to give rise to the possibility so obnoxious to the rule. And this plain view is in harmony with the understanding of Mr. Jarman. In his work on *Wills, Vol. I. p. 233,* he says:

"A testator is in less danger of transgressing the perpetuity rule, whilst providing for his own children and grandchildren, than when the objects of his bounty are the children and grandchildren of another; since, in the former case, he has only to avoid protracting the vesting of the grandchildren's shares beyond their ages of twenty-one years, and then the fact of the gift extending to after-born grandchildren would not invalidate it, because all the children of the testator must be in esse at his decease, and *their* children must be born in *their* lifetime, so that they necessarily come into existence during a life in being."

(4) As to the interest upon these legacies. The contention is that they do not begin to draw interest in favor of the legatee until one year after the testator's death. There is no dispute as to the general rule. Nor did there seem to be any difference between counsel as to the certainty of the exceptions thereto, in this state, after *Marsh* v. *Taylor, 16 Stew. Eq. 1,* in which the principles laid down in *Welsh* v. *Brown, 14 Vr. 37,* both as to the general rule and as to the exceptions, were approvingly referred to and relied on by the present Chancellor. But, as is so often the case, the counsel very widely separated in the expression of their views on the application on these rules. In *Welsh* v. *Brown, supra,* the court enumerated, amongst the exceptions to the general rule, a legacy in payment of a debt or to a minor child, or to a child *in loco parentis,* or an annuity, or to the residuary legatee, when the interest is payable to him for life, and the principal goes over, or where there is some special equity in the case making it plain that the testator intended something else, or where by following the general rule injustice would be done, as in the case of *Van Blarcom* v. *Dager, 4 Stew. Eq. 783.*

In the case of *Welsh* v. *Brown,* the court says that these exceptions are plainly distinguishable from legacies of a definite sum with remainder over. Now, in determining these questions, the court is not to do any injustice, by withholding the interest on this large sum of $50,000 from the widow, in order that it may augment the principal of the remainder, which is given to the grandchildren. And by reading the clause in question, it will be seen that, not only is the interest divided, and income of $50,000 given to the widow, but she is permitted to make selections of stocks, bonds and securities which the testator may hold at his death, to that amount. And she is made one of the executors. To my mind, it is the duty of the court to declare that, so far as the widow selects stocks, or bonds, or other securities, she is entitled to all the interest, income and dividend arising therefrom. This was evidently the will of the testator, and this, by no possibility, can be said to be in conflict with any of the authorities. But the testator also said that the said principal sum should be invested for the benefit of his widow. In my

judgment, to the extent that the widow does not select stocks, or bonds, or other securities, but depends upon the conversion of them, or of other portions of the estate into money, and the interest thereof for her benefit, the legacy will fall under the general rule, and she can only claim interest from the end of the year after such investment, if the investment be made within the year, or from the end of the first year after the testator's death, in case there should be a failure to invest for her special benefit earlier.

(5) The rule referred to gives the residuary legatees for life interest on their portions from the death of the testator. This same rule will also give to the grandchild (one of the Van Antwerps), which the testator had taken under his own guardianship, and to which he was *in loco parentis*, the interest on its legacy from the death of the testator.

(6) As to the rights of the son, Fitz Randolph Stout, counsel for the defendants insists that we have to deal not only with a debt but with an advancement. His argument goes the length of crediting the estate with the whole amount of the debt of Fitz Randolph Stout to his father at the time of his death, *i. e.*, that he shall be required to pay the debt, and also shall allow for a like sum in payment of his legacy. This conclusion cannot be reached without doing the most extraordinary violence to the language of the testator. When that portion of the will is read, it will be seen that the proper course for the executor is to pay the interest of the one-third, less the note found amongst the assets, and any other just claims, to the son, Fitz Randolph Stout, during his lifetime.

I will advise a decree in accordance with these views.

# CASES

# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY,

### MAY TERM, 1888.

ALEXANDER T. McGILL, ESQ., ORDINARY.

ABRAHAM V. VAN FLEET, ESQ., VICE-ORDINARY.