Cox *v.* Wills.

MARY A. H. COX, executrix, et al., executors of Lydia H.
Leeds, deceased,

*v.*

HANNAH WILLS et al.

1. A testator gave the residue of his estate to his wife "in good faith,
believing that she will make a will and thereby distribute so much of the
last named legacy among my near relatives as she may not use for comfortable
maintenance, and it is my will that my said wife shall make such distribu-
tion"—*Held,* that the words created the wife a trustee of the residue and its
earnings—first, for her own benefit, to the extent that she might need it for
her comfortable maintenance, and after her death for the testator's next of
kin.

2. The widow, who was named one of the executors of the will, took pos-
session of the residue and mingled it with her own separate estate, and
invested both in her own name and lived upon the income, but did not use for
that purpose the whole of the income, so that at her death (twenty-one years
after her husband's) her personal estate amounted to considerably more than
the sum of the residue of her husband's estate and her own estate at his
death.—*Held,* that her husband's next of kin are entitled to a portion of her
estate, which shall bear the same proportion to the whole as the residue of her
husband's estate bore to the sum of that residue and her separate estate at his
death.

On bill for direction &c.   Heard on pleadings and proofs.

The complainants are the executrix and executors of the will
of Lydia H. Leeds, deceased, and the complainant Mary A. H.
Cox is the residuary legatee named in that will.   Lydia H.
Leeds was the surviving executrix of the will of her husband,
John Leeds, who died in March, 1866.   The ostensible object
of the bill—which is filed against his heirs at law, who are his
next of kin, and also against the beneficiaries under the will of
Lydia H. Leeds—is to obtain the direction of the court as to the
disposition of the personal estate of John Leeds which came to
the hands of Lydia H. Leeds as his executrix and residuary
legatee.

John Leeds died seized also of certain real estate—a house and lot—and the defendant Hannah Wills, who is one of his heirs at law, brought ejectment against Mary A. H. Cox to recover an undivided share in this house and lot. The bill prays an injunction against this suit.

Hannah Wills only has answered. The questions presented for solution arise out of a clause in the will of John Leeds, as follows:

"Item—I give unto my beloved wife Lydia H. Leeds five hundred dollars to be considered in lieu of certain moneys she gave me upon our marriage, and further I give my said wife all such of my household goods and kitchen furniture as she may think proper to take.

"And further my will is and I order and direct my executors and executrix hereinafter named to make sale of all my farm whereon I now dwell together with all my other lands not given away at such times as they may think proper and to make and execute good and sufficient deeds of conveyance for the same, and my said executors are also required to make sale of my personal estate and with the proceeds thereof to pay my said debts and legacies aforesaid so far as the same can be so paid off and satisfied and the remainder of my said debts and legacies not satisfied by the proceeds of the sale of my said personal property is to be paid and satisfied out of the proceeds of the sales of my real estate.

"And all the balance of said sales not required to pay my said debts and legacies aforesaid, I do hereby give and bequeath unto my beloved wife Lydia H. Leeds to be paid to her as soon as conveniently can be after my said debts and legacies are paid and satisfied which said last named legacy I give my said wife in good faith, believing that she will make a will and thereby distribute so much of the last named legacy among my near relatives as she may not use for comfortable maintenance, and it is my will that my said wife shall make such distribution."

The farm was sold by the testator after making this will, and the house and lot above mentioned purchased.

The personal estate of John Leeds amounted, after paying debts and legacies, as found by the orphans court of Burlington county, to $4,052.63. The assets representing this amount were taken by Mrs. Leeds and converted into cash, and mingled by her with her own moneys and invested in her own name. The house and lot were occupied by her during her lifetime, and no attempt was made to convey it under the power of sale above recited.

Lydia H. Leeds died in 1887, just twenty-one years after her husband. The inventory of her estate shows an aggregate of $6,607.50 of interest-bearing securities, $148.50 of accrued interest thereon, $1,345.12 of cash in purse and bank and $525 of household goods specifically bequeathed—in all, $8,626.12. The complainants accounted as executors, and the account, as allowed by the orphans court, shows a net balance in their hands of $7,246.10, after allowing them for household goods specifically bequeathed amounting to $525, and certain promissory notes of H. C. French, specifically bequeathed to him, amounting to $419. Adding this last item to $7,246.10 increases the net estate to $7,445.10, without including the furniture.

*Mr. Charles E. Hendrickson,* for the complainants.

*Mr. Mark R. Sooy,* for the defendants.

PITNEY, V. C.

I. The contention of the complainant Mrs. Cox is, that the bequest of the residue to Mrs. Leeds, in the language above set forth, must be construed as an absolute gift, and that the limitation over is, therefore, void, and that the house and lot, being subject to a power of sale, must be treated as converted into personalty and subject to the same disposition.

The defendant Mrs. Wills, on the other side, claims that the bequest of the residue was not an absolute gift, but subject to a trust—first, in favor of the widow as to so much thereof as she might need and actually use for her comfortable maintenance, and as to the remainder, with its earnings, for the testator's next of kin.

Mrs. Cox's counsel, in support of her contention, relies upon that train of decisions which holds, that where there is an absolute gift with remainder over of what the first donee "shall leave" or "shall not use," and the like, the limitation over is void and the first donee takes an absolute estate. The rule relied upon is illustrated in this state by *The Dutch Church* v. *Smock, Sax. 148 ; Annin* v. *Van Doren, 1 McCart. 135 ;*

Cox *v.* Wills.

*Borden* v. *Downey, 6 Vr. 74; S. C., 7 Vr. 460; McClellan* v. *Larchar, 18 Stew. Eq. 17; Rodenfels* v. *Schumann, 18 Stew. Eq. 383.*

In order to bring the case within the rule stated, the first donee must have an unfettered and unlimited right and power of disposition for his or her own use, and such was the construction put upon the language of the will in each of those cases.

Chancellor Green (*1 McCart. 143*) says: "It seems clearly settled that a right in the legatee or devisee to dispose of the estate given or devised at his pleasure, and not a mere power of specifying who may take, amounts to an absolute gift."

Turning to the case in hand, we find that the gift is to the wife "in good faith, believing that she will make a will and thereby distribute so much of the last named legacy among my near relatives as she may not use for comfortable maintenance, and it is my will that my said wife shall make such distribution."

It is manifest at once that the aspect most favorable to the complainant's view to be taken of this language, is to inquire whether the words "for comfortable maintenance" impose any limitation on the widow's power of disposition, and to concede that without those words the clear and imperative expressions of testator's will, that what remained should go to his relatives, would be nugatory.

It ought here to be observed that if we strike out the words "so much  *  *  *  as she may not use for comfortable maintenance," the whole gift will be subject to an imperative trust without any beneficial interest in the trustee, so that the only personal interest of the wife arises by implication from the use of the words just quoted. The case is, in this respect, in marked contrast with some of those above cited.

Looking at the words in question, it seems to me quite plain that they do limit the wife's power of disposition. The only ground upon which the contrary can be argued would be that the attempted limitation is too indefinite for ascertainment by legal process. But I cannot so consider it. Power to expend for comfortable maintenance should be construed, in my judg-

ment, to mean what is *reasonably necessary* for that purpose, having regard to the previous habits, tastes and style of living of the donee, and the amount of the estate. So construed, the limitation is in precise accord with the suggestion of Chancellor Green, in *Annin* v. *Van Doren, 1 McCart. 144,* where he says: "The uncontrolled power of expenditure necessarily implies absolute ownership as fully as the power of disposing of it. And this difficulty can only be overcome by limiting the right of expenditure to *so much as may be necessary for the support of the legatee.* But there is no such limitation in the will. If the legatee had seen fit to expend the whole of the legacy in a style of living totally distinct from that to which she had been accustomed in her father's house, there would have been no power in this court or elsewhere to prevent it."

Such a limitation was held good by Vice-Chancellor Bird, in *Reeve* v. *Beekman, 15 Stew. Eq. 613,* and by the present chancellor, in *Stevens* v. *Flower, 1 Dick. Ch. Rep. 340.* The testator there gave to his wife the use and income of the residue of his estate and "to use as much of the principal as she may need." The chancellor held that the right to consume the principal depended upon her necessity, and the executor was allowed for only so much of the principal paid to the widow as was applied to satisfy her needs.

It is common practice for this court to ascertain what is sufficient "for comfortable maintenance." *1 Jarm. Wills (R. & T. ed.) 649, and cases cited; Kilvington* v. *Gray, 10 Sim. 293; Brown* v. *Paull, 1 Sim. (N. S.) 92; In re Pedrotie, 27 Beav. 587, 29 L. J. Ch. (N. S.) 92; Reeve* v. *Beekman, supra.* And it seems to me clear enough that this court, at the instance of either of the *cestuis que trust* in this case, would, upon a proper case shown, have ascertained what was sufficient for the comfortable maintenance of Mrs. Leeds, and would have restrained her from expending for her own use out of the estate in question more than that sum.

Among the cases cited by complainant the one most in his favor is *Howard* v. *Carusi, 109 U. S. 725,* but a close view of it shows it clearly distinguishable. In the first place, the devise

Cox *v.* Wills. ·

over there was only of such part of the estate as the first taker " shall not have disposed of by devise or sale," and, in fact, he did devise it all.

The court held that the first devisee took a fee simple with unlimited power of disposition, and hence the devise over was void ; and, further, that the words " in the hope and trust that S. C. will not diminish the estate devised to him to a greater extent than may answer for his comfortable support," were precatory words and did not create a trust, citing in favor of that position *Knight* v. *Knight, 3 Beav. 148; Van Duyne* v. *Van Duyne, 1 McCart. 397,* and the later English cases which are in accord with it.    This last case of *Van Duyne* v. *Van Duyne,* was reversed by the court of errors and appeals (*2 McCart. 503*), and the trust there claimed established, and, though no opinion was read, the reversal has always been treated by the bar and bench as an expression by the court of a preference for the older English authorities, which hold words like those used in *Howard* v. *Carusi,* to create an imperative trust.    And such was the construction put upon the New Jersey case by the late chancellor, in *Eddy* v. *Hartshorne, 7 Stew. Eq. 419.*

No such difficulty, however, arises in this case.    The last clause of the bequest is unmistakable :  " It is my will that my wife shall make such distribution."

The intention of the testator to limit his wife's right to the residue of his estate is further manifested by the previous gift to her of $500 in cash, as well as the furniture outright.

There is here no uncertainty as to who were the ulterior objects of the testator's bounty—" near relatives " means next of kin. *Griffiths* v. *Evan, 5 Beav. 241; 11 L. J. Ch. (N. S.) 219; Whithorn* v. *Harris, 2 Ves. 527 ; 2 Jarm. Wills (R. & T. ed.) 660 et seq.*

It follows that the trust here has all the certainty required to give it validity.    The amount subject to the trust is, in effect, the whole of the residue of the estate of John Leeds, less what the widow might actually expend for her comfortable maintenance.    This is capable of ascertainment by this court.

The *cestuis que trust* are the next of kin of the testator.

The intention to create a trust is clear—" It is my will that my wife make such distribution."

II. The complainant Mrs. Cox, however, by the bill, and at the hearing, further contended that, admitting the foregoing views to be correct, still the widow was entitled to live comfortably upon the principal as well as the interest of the estate of her husband, without resorting to her individual estate or its income. She alleges and proves that the widow had an individual estate, and she attempted by evidence and in argument to show that the actual cost of the widow's living was sufficient to consume the whole of the estate left by her husband, and that the estate left by the widow is all accounted for by the principal and accumulated earnings of her own estate; hence, it is argued that at her death she owed her husband's estate nothing. To this the defendant replies, first, that the proofs show that the widow's separate estate amounted at her husband's death, in 1866, to $600, and no more, to which she added, three years later, the legacy of $500 bequeathed to her by him, and that the evidence disproves any material compounding of this sum, and, so far as it was compounded and interest added to principal, it falls far short of reaching the amount of her personal estate. And, second, she urges that the widow, by mixing the funds of her husband's estate with her own, and by failing to keep an account of her living expenses, has placed herself in a position where it is impossible for her or her representatives to say that she spent the principal as well as the interest of her husband's estate for her comfortable support and maintenance.

With regard to the amount of the wife's separate estate, I think the evidence supports the defendant's contention, and that it amounted at her husband's death to no more than $600, to which was added three years later the $500 legacy given her by her husband. These moneys were loaned to her husband's brother, Ellis N. Leeds, a resident of St. Louis, at ten per cent., which was in most instances forwarded to Mrs. Leeds. In addition to these sums Mrs. Leeds sent Mr. Leeds $225 on the 1st of January, 1868, the origin of which is not clear. This made $1,325 due her from him and certainly represented the whole of

·her separate estate and probably included some of her husband's estate. In April, 1872, six years after her husband's death, she collected from the township of Medford $4,000 which it owed her husband in his lifetime, and upon which it had paid interest to her up to that date, and sent out of this sum $3,800 to Ellis N. Leeds, who added to it $1,200 of the $1,325 he already owed ·her, and made a new loan to a third party for $5,000, and gave ·her his own note for $257.50 for the surplus and interest.

I stop here to say that there is a manifest error in a statement ·made up by Ellis N. Leeds and put in evidence. It includes a note of $5,000 under date of April 22d, 1868. The correspondence shows there was no such note. Other errors appear in that statement when it is subjected to comparison with the letters written by Mr. Leeds to his sister-in-law, and which were ·put in evidence. Besides these investments, she loaned, in 1869, $300 to one Brown upon his note to her, and upon which he paid her interest for several years.

This funding of these moneys amounted to a complete blending of the two estates.

Subsequently the borrower of the $5,000 paid it, and Ellis N. Leeds himself again borrowed it. The interest on these western loans was sent to Mrs. Leeds semi-annually. Later on, in ·April, 1884, eighteen years after her husband's death, she·sent to Ellis N. Leeds $825, which, with the previous loans, made $6,250 owing to her by him, and this is the amount he owed her at her death. She held for many years a note of S. Woolston ·for $500 given her in part payment of a note of $1,000 which her husband at his death held against him. This was paid April 4th, 1884, and formed part of the $825 sent to Leeds on ·that day.

Mrs. Leeds's bank account shows that she kept a constantly ·increasing balance lying idle in bank besides what she probably ·kept in the house, so that, at her death, her moneyed assets consisted of cash in purse, $134.64; cash in bank, $1,210.48; E. N. Leeds's notes, $6,257.50 and interest, and H. C. French's notes, $350 and interest; amounting to $7,952.62.

Cox v. Wills.

The proofs show very little compounding in the way of adding interest to principal. She appears to have placed most of the interest when received to her credit in bank, and to have used out of it only what she needed for personal expenses.

There is one feature in the final account of the executors of John Leeds, passed by the Burlington orphans court, which I deem worthy of notice. In order to reduce the balance in their hands to $4,052.63, they asked and received credit for $301.61 for "amount expended by Lydia H. Leeds, one of the account-ants, for provisions and store goods for the family," and $704.50 "for household goods and stock taken at appraisement."

The first of these items must have been for the living ex-penses of the widow from the death of her husband up to the date of the accounting, a period of nearly three years. With regard to the item of "household goods and stock," it is to be observed that the will gave her only "household goods and kitchen furniture," and an examination of the inventory shows that these amounted to only about $150. Besides, there was perhaps $100 of consumable goods, making in all $250. Hence she was, and is, properly chargeable with about $450 in addition to the $4,050 balance found on the accounting; and just this amount of assets of her husband's estate remained for several years unchanged by her, viz., the Medford township note for $4,000, and Woolston's note for $500.

The western investment earned at first, and up to 1877, ten per cent.; from 1877 to 1880 it earned eight per cent., and from that time on seven per cent. At that rate, the interest earned by Mrs. Leeds's separate estate would amount to about $2,100, which, added to the principal of $1,325, amounts to about $3,425, and that sum deducted from $7,952.62, the amount of Mrs. Leeds's personal estate, exclusive of her household goods, leaves about $4,500 to represent the trust fund, which is about the net amount with which she should have been charged by the orphans court in the settlement of her account as executrix of her hus-band.

It thus appears that, at her death, Mrs. Leeds's estate was amply sufficient to replace the principal of this trust fund and

leave her separate estate with all its earnings intact, and it becomes unnecessary to consider the mass of evidence adduced to show what was probably the actual cost of her living. Mrs. Cox swears that she dressed well, kept a horse and carriage and lived, generally, in the same style that she was accustomed to in her husband's lifetime, and that she was, withal, very saving and careful in her expenditures.

I think, however, that the defendants' position on this part of the case is sound, and that if there had been a deficiency of assets to pay the whole of the trust fund and the separate estate with all its earnings, it was not competent, under the circumstances, for Mrs. Cox to say that the actual expenditures were made out of either the principal or interest of the estate of the husband's rather than that of the wife. In order to enable the widow to take that position, it was necessary for her to keep the two estates separate, and to keep an account of the income from her husband's estate and her disbursements thereout for her comfortable maintenance; and in order to be allowed for the latter, it was necessary for her either to procure from this court an order fixing the amount, or to agree upon it with the remainderman, or, as in the event which has happened, to be able to maintain at all times the reasonableness of her expenditures by competent proof. The language of Vice-Chancellor Bird, in *Reeve* v. *Beekman, 15 Stew. Eq. 619, 620,* is apt.

I have so far considered this part of the case from the complainants' standpoint and upon the assumption, for argument's sake only, of its soundness, but the answering defendant is not satisfied with having the principal only of the trust estate, and goes further and insists (1) that the next of kin of John Leeds are entitled to the whole of the estate of Lydia by reason of her having commingled her own estate with that held in trust in such a manner that they cannot be distinguished, upon the principle that, if a trustee mingles the trust funds with his own so that they cannot be separated, the whole belongs to the trust fund; or, failing in that, she insists (2) that the widow must be presumed to have lived out of the income of the commingled

fund, and that the net accumulations must be held to be the earnings of each fund in proportion to its size.

There is great force in the first of these positions, but upon full consideration I do not think the circumstances of this case require the application of the principle invoked.

With regard to the second position, I have come to the conclusion that it is equitable and just. The language of the will discloses to my mind no intention to give the widow any greater interest in the income of the estate than in the principal, and I feel constrained to hold that the income, as well as the principal, is subject to the trust. The two estates being commingled, it is impossible now to say that the income of either part more than the other was used by the trustee for her living, and it follows that what now remains is the product of both estates. I think it would be both equitable and just to divide the fund between them in the proportion which the two estates originally bore to each other. This cannot be done with absolute accuracy. We must be satisfied, at best, with an approximation. I adopt the following plan, bearing in mind that the burthen is on the widow's executors to show how much of the estate belonged to her :

The net estate of the husband I fix at $4,500, and that of the wife at $1,300, giving her the benefit of $200 of the investment of $225 of January 1st, 1868, although the probability is that it came from her husband's estate. These sums bear to each other the proportions of seven hundred and seventy-five thousandths and two hundred and twenty-five thousandths. The joint estate at Mrs. Leeds's death was $8,626.12, and there were no debts. In this is included $525 for furniture, of which it is fair to infer that $400 worth was purchased, after her husband's death, with the earnings of the joint estate, and so properly belongs to it; but throwing this aside, and also allowing the funeral expenses and cost of settling the estate to come out of the joint fund, and thus resolving all doubts in favor of the widow instead of against her, as is well warranted by the circumstances, there remains a net estate, as found by the orphans court, of $7,665, including, as we must, the French notes.

Dividing this sum in the proportions above stated, makes the share due to John Leeds's trust estate $5,947.50, and to Lydia Leeds's separate estate $1,717.50.

The earnings of the estate, since the settlement in 1888, must be divided in the same way.

This mode of making the division does not bring into account the rental value of the house and lot, which in strictness should be included and counted as part of the contribution to the widow's support furnished by the trust estate, and also the house and lot itself as part of the joint estate, which, if so included, would reduce the widow's share. On the other hand, it does not take into account certain improvements put on the house and lot by her a few years before she died. I have been unable to determine from the evidence either how much those improvements cost, or how much they added to the permanent value of the property. If that can be ascertained, then twenty-two and one-half per cent. of such increased value may be added to the sum of $1,717.50 above stated.

III. One other matter remains. By her will Mrs. Leeds gave certain legacies to her husband's relatives, including the defendant Mrs. Wills, and two of her children. It is insisted by the complainants in their bill, and admitted by the answer of Mrs. Wills, that if the opinion and decree of this court should be adverse to Mrs. Cox, then these bequests should be held null and void. Mrs. Wills is the only answering defendant. But I understood, at the hearing, that she and her counsel represented the other defendants in the same interest. Strangely enough, there is no direct allegation in the bill nor proof as to who the next of kin of John Leeds are. It was stated at the argument that they were Mrs. Wills, his sister; Ellis N. Leeds, his brother; and George and Virginia Leeds, children of a deceased brother. These are all parties to the bill, and if they and the other legatees, who are of the Leeds blood, have been duly served with process, and, being notified of the proposed decree, make no objection, it will be framed accordingly, and I shall be relieved from considering the rights of the parties in this respect.

With regard to costs.  The bill was really filed in the interest
·of Mrs. Cox, the residuary legatee.  All its allegations and con-
·tentions are in her favor.  It is in this respect in marked con-
trast with the ordinary bill of executors and trustees who stand
indifferent between several claimants of the fund in their hands.
Mrs. Cox is the losing party.  The whole difficulty has arisen
from the failure of the testatrix, whose residuary legatee she is,
·to properly administer the trust cast upon her by her husband's
will.  Under these circumstances, I feel constrained to order the
·costs to be paid out of the residue of the estate of Mrs. Leeds,
·after satisfying the amount due the *cestuis que trust* under the
will of John Leeds.

This result is, no doubt, a disappointment to Mrs. Cox.  Be-
·sides the legacies to persons of the Leeds blood, which are by
·arrangement to be released, the testatrix made bequests to others
sufficient to absorb the whole of her estate as now found, and
Mrs. Cox, who she intended to be her principal beneficiary, will
·receive little or nothing.  This consideration, however, cannot
influence the decision of this court in construing this bequest,
·and I can do no more than express my regret that Mrs. Leeds
should have been so illy advised as to her rights under what
·seems to me a very plain will.