ULRICH EBERHARDT, appellant,

*v.*

FRANCOISE CUAZ PEROLIN, respondent.

1. The expression of a wish or desire on the part of a testator, accompanying an absolute devise or bequest, that a particular application be made of the whole or a definite part of the property bequeathed or devised, is obligatory and creates a trust, unless, from the context, it clearly appears that the first taker is intended to have discretionary power to control or defeat the desire expressed.

2. One Vinot, by holographic will, bequeathed $2,000 to Francoise Cuaz Perolin and $20,000 to Charles D'Assier, absolutely. Later in the will he disposed of the residue of his estate as follows: " to my beloved wife Margaret Vinot I give the Balance of my Personal and real Estate to dispose of it as she will Elect I would however recomand to her to increase the fund of the first Prysbiterian church of Mendham New Jersey to double the amount set apart in this instrument. *and at her Plaisure if My Wife feel dispose to do so but it is not obligatory* Also to increase the donation to Francoise Cuaz Perolin of Two thousand dollars $2,000 in the Events of said Francoise Cuaz Perolin remained with my Mother to the End of her life and this gifth of my Wife to be left to her when my Wife has departed this life so as to make her part of my Estate equal or of the same Amount as that left by me in this my last will to charles D'Assier, in this my last will and testament." The italicized words were plainly interlined after the will was originally drawn. *Held*, that a

Eberhardt v. Perolin.

trust was created in favor of Francoise Cuaz Perolin to the amount of $18,000, payable to her upon the death of both the testator's mother and wife.

3. Interest upon the $18,000 is to be calculated from the date of the death of the testator's mother, she having survived the wife, and more than a year having expired since the testator's death.

On appeal from decree of the Hudson orphans court establishing a trust, &c.

*Mr. Joseph D. Bedle* and *Mr. William J. Gibson*, for the appellant.

*Mr. John C. Besson* and *Mr. Mahlon Pitney*, for the respondent.

*Mr. Charles D. Thompson*, for executor of Aaron Hudson, one of the next of kin of Margaret Vinot.

THE ORDINARY.

The decree appealed from does not appear to have been made in either a proceeding for distribution or a suit for a legacy. In either of those proceedings there would be semblance of jurisdiction in the orphans court to make the decree in virtue of legislative sanction which exists, although it may be of questionable constitutional authority so far as it abstracts from the court of chancery a part of its jurisdiction over the construction of wills, especially where it concerns the matter of a trust, by conferring it upon another court. *Adams* v. *Adams, 1 Dick. Ch. Rep. 298 ; 1 Story's Eq. Jur. 601, 602.* But, as I understand the present proceeding, its sole object is to secure the establishment of a trust, there being no pretence that there is any money to be presently distributed or any legacy due and payable. It appears to be a matter of purely chancery cognizance over which the orphans court has no jurisdiction. This suggestion, however, has not emanated from counsel and the question it presents has not been argued, and I therefore will content myself with the mere mention of it, in order that this decision may not be a precedent in favor of the doubtful jurisdiction.

38

Eberhardt v. Perolin.

The question that has been argued is, whether one Jules T.
Vinot, by his will, created a trust of $18,000 for the benefit of
the respondent, Francoise Cuaz Perolin. Vinot died on the
28th of March, 1888, leaving a will dated on the 28th of Octo-
ber, 1886, of which the following is a copy :

"NEW YORK October 28th 1886.

"*In the name of God Amen.*

"I Jules T Vinot native of Verdun France Citezen of the United States of
America in Full possession of memory and mind *declare* this to be ma last
will and testament that after my death all my debts and Funeral Expanses be
paid out of my Estate Also the following bequest to my Brother Louis Vinot
Five thousand Dollars $5,000 or 25,000 Thousand Francs to be deposited in
the Bank of France when the same will have been converted in securities of
the Chemin de fer de L'ouest he reciving the Interest and after his death to
go to his only son Henri Vinot—to my lettle Cousin charles D'Assier One
Hundred thousand Francs 100,000 or Twenty thousand dollars $20,000 to be
given to him in rail road bonds at their Value at the Stock Exchange on the
Opening of this my last will and testament or to buy for him 100,000 francs
of Exchange on Paris this I leave to the discretion of my wife Margaret.
Vinot, to Adele Bourbon Two thousand Dollars $2,000 to Emelie Bourbon
Two thousand dollars $2,000 to Georges Bourbon Two thousand dollars $2,000
to Francoise Cuaz *Perolin two thousand* dollars $2,000 the young Girl who live
with my Mother this is as a recompanse that I give to her for faithful services
and *devotion to my Mother, to my Mother an Income of $200 two Hundred dollars
per year* to the first Prebysterien Church of Mendham New Jersey $2000 Two
thousand dollars to be kept in the seaman savings Bank situated in Wall
Street New York City one half of the Interest to be spend in taken care of
our lot and monument in the cimetery back of the hill top church where the
remain of our Beloved son Jules T Vinot Jr rest in peace the balance of
Interest the trustees of the church to dispose of it as they will think proper,
to Emma Youmans Six thousand dollars $6,000, to my beloved Wife Margaret
Vinot I give the Balance of my Personal and real Estate to dispose of it as
she will Elect I would however recomand to her to increase the fund of the
first Prysbiterian church of Mendham New Jersey to double the Amount set
apart in this instrument *and at her Plaisure if she My Wife feel dispose to do so
but it is not obligatory* Also to increase the donation to *Francoise Cuaz Perolin*
of Two thousand dollars $2,000 in the *Events* of said Francoise Cuaz *Perolin*
remained with my Mother to the End of her life and this gifth of my Wife
to be left to her when my Wife has departed this life so as to make her part
in my Estate Equal or of the same Amount *as that* left by me in this my last
will to charles D'Assier, in this my last will and testament I constitute my
beloved Wife Margaret Vinot my *sole* Executrice but should she desire or
went any advise in the Execution of this instrument I would advise her to
call for the help of my Friend Peter De Motte now book keeper in the Man-

Eberhardt *v.* Perolin.

hattan life Insurance company 156 Broadway New York City, and now in conclusion Whereof I have hereunto subscribe my Name and Affixed my seal this Twenty Eight day of October Eighteen Hundred and Eighty six 1886 the year of our Lord."

The testator's wife, Margaret Vinot, survived him only five days, dying on the 2d of April, 1888. Subsequently, on April 30th, 1888, the will was admitted to probate, and afterwards, in August of the same year, letters of administration *cum testamento annexo* were issued to the appellant, Ulrich Eberhardt. Margaret Vinot also left a will, by which she devised and bequeathed her entire estate to her husband. Of her estate, also, Ulrich Eberhardt became administrator *cum testamento annexo.* The personal estate of Jules T. Vinot amounted to more than $100,000, and, after the payment of the expenses of its administration and the undisputed legacies bequeated by the will, there remained upwards of $64,000 in the hands of the administrator, all of which he has distributed, save $25,000, held to abide the event of this suit. The distributees of the estate, beyond those to whom legacies are given by the will, are the next of kin of Margaret Vinot.

It is observed that the decision of the question presented upon this appeal depends entirely upon the construction of that part of the will in which the testator gives the residue of his estate to his wife, recommending certain payments by her. That part is as follows :

" To my beloved wife Margaret Vinot I give the Balance of my Personal and real Estate to dispose of it as she will Elect I would however recomand to her to increase the fund of the first Prysbiterian church of Mendham New Jersey to double the amount set apart in this instrument *and at her Plaisure if My Wife feel dispose to do so but it is not obligatory* Also to increase the donation to Francoise Cuaz Perolin of Two thousand dollars $2,000 in the Events of said Francoise Cuaz Perolin remained with my Mother to the End of her life and this gifth of my Wife to be left to her when my Wife has departed this life so as to make her part of my Estate equal or of the same Amount as that left by me in this my last will to charles D'Assier, in this my last will and testament."

It is contended for the respondent that the testator's recommendation to his wife, so far as the respondent is concerned, is

imperative, and that, in effect, it creates a trust in her behalf, by which she is to be secured $18,000 if she shall remain with the testator's mother, with whom she resides as adopted child or companion, to the end of the mother's life.

It is a rule of testamentary construction, established by the earlier English cases, that the expression of a wish or desire on the part of the testator, accompanying an absolute devise or bequest, that a particular application be made of the whole or a definite portion of the property bequeathed or devised, is obligatory and creates a trust, unless, from the context, it clearly appears that the first taker is intended to have discretionary power to control or defeat the desire expressed. *Malim* v. *Keighley, 2 Ves. 333; Knight* v. *Boughton, 11 Cl. & F. 513; Knight* v. *Knight, 3 Beav. 148; Hawk. Wills 160; 2 Story Eq. Jur. § 1068; 1 Jarm. Wills 680.*

The word " recommend " is held to express desire. *Malim* v. *Keighley, 2 Ves. 335; Paul* v. *Compton, 8 Ves. 380; Tibbets* v. *Tibbets, 19 Ves. 656; Cholmondeley* v. *Cholmondeley, 14 Sim. 590; Ford* v. *Fowler, 3 Beav. 146; Horwood* v. *West, 1 Sim. & S. 387; Hart* v. *Tribe, 18 Beav. 215.*

" In short," said Judge Story, in his work on *Equity Jurisprudence* § 1068, " it may be stated as a general result of the cases, in the language of Lord Eldon, that whether the words of the will are those of recommendation or precatory or expressing hope, or that the testator has ' no doubt,' if the objects with regard to whom such terms are applied are certain, and the subjects of the property, to be given, are also certain, the words are considered imperative and create a trust;" or, as another learned judge has expressed it (in a form, indeed, open to some criticism)—Lord Avanley, in *Malim* v. *Keighley, supra:* " Wherever any person gives property and points out the object, the property and the way in which it shall go, that does create a trust unless he shows clearly that his desire expressed is to be controlled by the party that he should have an option to defeat it."

The current of the later cases, both in this country and in England, is against the adoption of this rule. They consider

Eberhardt v. Perolin.

that its application is apt to defeat the intention of the testator, and that the wiser way to reach that intention is to take all words in their ordinary and natural signification unless, upon consideration of the whole will, it appears that a different meaning is intended. Thus the force of the rule, which establishes a *prima facie* meaning, is destroyed. Among these cases is that of *Colton* v. *Colton, 127 U. S. 300,* where Justice Matthews said upon this subject: "As to the doctrine of precatory trusts, it is quite unnecessary to trace its origin, or review the numerous judicial decisions in England and in this country which record its various application. If there be a trust sufficiently expressed or capable of enforcement by a court of equity, it does not disparage, much less defeat it, to call it precatory. The question of its existence, after all, depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning modified only by the context and the situation and circumstances of the testator when he used them. On the one hand, the words may be merely those of suggestion, counsel or advice, intended only to influence and not to take away, the discretion of the legatee growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact, though not in form, conveying the intention of the testator in terms equivalent to a command and leaving the legatee no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even dispose and limit the extent of the interest conferred upon his beneficiary."

Also *Hess* v. *Singler, 114 Mass. 56, 59,* where Chief-Justice Gray said: "It is a settled doctrine of courts of chancery that a devise or bequest to one person, accompanied by words expressing a wish, entreaty or recommendation that he will apply it to the benefit of others, may be held to create a trust, if the subject and the objects are sufficiently certain. Some of the earlier English decisions had a tendency to give to this doctrine the weight of an arbitrary rule of construction. But by the later cases in this, as in all other questions of the interpretation of wills, the intention of the testator, as gathered from the whole

Eberhardt v. Perolin.

will, controls the court; in order to create a trust, it must appear
that the words were intended by the testator to be imperative;
and when property is given absolutely and without restriction, a
trust is not to be lightly imposed, upon mere words of recom-
mendation and confidence."

In *Pennock's Appeal, 20 Pa. 268*, it was held that words
expressive of desire, recommendation and confidence are not
technical, but of common parlance, and not *prima facie* sufficient
to convert a devise or bequest into a trust.

Numerous other cases, in the different states in this country,
are to the same effect.

The unpopularity of the doctrine of precatory trusts in Eng-
land, for nearly a century, is shown by the following cases: As
early as *Wright* v. *Atkyns, 1 Ves. & B. 313* (1813), Lord Eldon
said of the trust: "This sort of trust is generally a surprise on
the intention, but it is too late to correct that."

In *Meredith* v. *Heneage, 1 Sim. 543*, in the house of lords,
the Lord-Chief Baron, after stating the rule as given by Lord
Avanley, in *Malim* v. *Keighley*, said : "I will not stay to inquire
whether the language of that very learned and excellent judge is
very accurate, and critically correct as applied in the cases ; but
I believe they are the very words his honor used. I think, how-
ever, that the result, as stated by him, is sufficiently correct for
the present purpose, and I shall consider the passages in the will
accordingly ; and I confess that I feel myself bound by the doc-
trine delivered in it as generally consistent with the doctrines
that have prevailed. But I hope to be forgiven if I entertain a
strong doubt whether, in many, or perhaps in most of the cases,
the construction was not adverse to the real intention of the
testator."

In *Sale* v. *Moore, 1 Sim. 534* (1827), the vice-chancellor said :
"The first case that construed words of recommendation into a
command, made a will for the testator, for every one knows the
distinction between them. The current of decisions has, of late
years, been against converting the legatee into a trustee."

Later cases equally exhibit discontent with the rule, and, from
*Lambe* v. *Eames, L. R. (6 Ch. App.) 597*, a marked departure

from it. Among them may be cited, *Stead* v. *Mellor*, L. R. (*5 Ch. Div.*) *225*; *In re Hutchinson &c.*, L. R. (*8 Ch. Div.*) *540*; *Mussoorie Bank* v. *Raynor*, L. R. (*7 App. Cas.*) *321*; *In re Adams &c.*, L. R. (*27 Ch. Div.*) *394, 406*; *Diggles* v. *Edmonson*, L. R. (*39 Ch. Div.*) *253*.

In our own state, in *Van Duyne* v. *Van Duyne, 1 McCart. 397*, where the testator devised his homestead farm to his son and daughter equally, " to them, their heirs and assigns forever, hoping and believing that they will do justice to my grandson, Hiram Van Duyne, to the amount of one-half of the said homestead farm," Chancellor Green strongly criticised the doctrine of the rule as to precatory trusts, and not deeming *Ward* v. *Peloubet, 2 Stock. 304*, to have adopted it, but considering himself at liberty to adopt such rule of construction as should seem best calculated to effectuate the intention of the testator, took the testator's language in its natural and ordinary meaning, in absence of anything in the will to indicate that the testator intended it to be regarded otherwise, and held that a trust was not created by the will in favor of the grandson. Upon appeal, however, from that part of the chancellor's decree which denied the trust, the court of errors and appeals reversed the decree without assigning reasons for its decision. *2 McCart. 503*. Though no reasons were given for this reversal, it is impossible to escape the conclusion that its effect was to affirm the English rule substantially as I have stated it. Such was the understanding of Chancellor Runyon, who, in the case of *Eddy* v. *Hartshorne, 7 Stew. Eq. 419*, in effect so announcing, applied the English rule, stating it in this language: " The rule of English chancery is, that when, by will, property is given absolutely to a person, and the same person is, by the giver, 'recommended,' 'entreated,' 'requested,' or 'wished' to dispose of that property in favor of another, the recommendation, request or wish is held to be imperative and to create a trust, if the subject and objects are certain."

Such, also, is the understanding of Vice-Chancellor Pitney, who, in *Cox et al. Exrs. of Leeds* v. *Wills, 22 Atl. Rep. 756*, says,

that the bar and bench have always taken the reversal of Chancellor Green to have this meaning.

I must then regard this rule as binding upon me and proceed to construe the will, here questioned, in the light of it.

In the first place, the additional circumstances are to be noted, that the will is a holograph, by a Frenchman who is plainly deficient in orthography and ability to properly punctuate his sentences and use capital letters, although his production, in many respects, exhibits intelligence and considerable thought, and also that, in the portion of the will which is offered for construction, he has plainly interlined immediately after the word "instrument," at the end of the provision for the increase of the legacy to the Presbyterian church, these words, "and at her Plaisure if she My Wife feel dispose to do so but it is not obligatory," following which, without intervening punctuation, are the words, "Also to increase the donation" &c., the word "also" commencing with a capital "A." Upon a close inspection of the original will with the aid of a magnifying-glass, I am satisfied that a long downward stroke, by way of punctuation, originally followed the word instrument, but that when the interlineation was made it was written over in such a way as to make it run into, or constitute part of, the letter "b" in the word obligatory.

As suggested by counsel for the respondent, it will simplify the examination of this writing, if it is first considered as though it did not contain the interlineation referred to.

It is observed that the testator gives the residue of his estate to his wife, and then adds the words, "to dispose of as she will Elect I would however recomand her" &c. At this point it is argued for the appellant, that the gift is absolute in terms with express power of disposition added, and that under the rule of construction laid down in *Downey* v. *Borden, 6 Vr. 74; S. C. on error, 7 Vr. 460; McClellan* v. *Larcher, 18 Stew. Eq. 17; Rodenfels* v. *Schumann, 18 Stew. Eq. 386,* and other decisions of this state to be found cited in the opinions in those cases, that where an estate is given to a person generally with power of disposition, it carries a fee, notwithstanding a subsequent devise

Eberhardt v. Perolin.

·over. It is to be noted, in answer to this insistment, that though the language of the power of disposition in the will contains the liberal words, "as she will elect," it proceeds, by the use of the adversative conjunction, "however" (if the testator's recommendation is to be held as imperative), to restrain the freedom of the preceding words, by controlling and directing the disposition in part. It is then apparent that the question whether or not the power of disposition is absolute, depends upon the solution of the question whether the testator's recommendation is imperative. A constituent element of the rule laid down in the cases just referred to, and invoked by the appellant, is, that the power of disposition shall be uncontrolled. Where that power is controlled, the idea of absolute ownership to the extent, at least, of that control, is destroyed, and the rule does not apply. The very idea involved in the creation of an efficient trust is, that an estate given is coupled with a directed or controlled power of ·disposition.

Proceeding, then, to the recommendation, it is found that it ·contemplates the doubling of a fund previously given to the First Presbyterian Church of Mendham, and also the increase ·of the testator's donation of $2,000, to the respondent Francoise Cuaz Perolin, upon the fulfillment of a certain condition, at the happening of a certain event and to a certain sum. The objects ·of the testator's bounty, the intended amount of his bounty and the times of its bestowal, are all pointed out with certainty. Thus far the case appears to be within the rule that a trust is created. But here attention is arrested by the testator's characterization of the proposed increase of bounty, as the gift of his wife. It is claimed that the word "gift" implies a voluntary giving, and that when the bounty was styled, "this gift of my wife," the testator meant that it is to be bestowed by the wife, of her free will and not in obedience to his requirement, and, assuming this reasoning to be correct, it is insisted that in prescribing the very terms of his recommendation, the testator plainly indicated that the recommendation is not to be regarded as imperative.

The difficulty in placing reliance upon this argument lies in the fact that the testator has not elsewhere, in the will, displayed an accurate appreciation of the exact meaning of the words he uses. For instance, in the very clause considered, he speaks of his legacy to the respondent as a "donation;" a word which, although it serves his purpose, is more aptly used to describe that which is given to a public cause or charity than to indicate a bounty to an individual. It is to be remembered that Vinot was born and reared in France, and that the English language was consequently not his native tongue. Many indications of his proneness to adopt his native language, a fact significant of his lack of familiarity with English, appear in the will. Under the circumstances we must not too readily assume that he meant to use the Saxon word "gift," in its exact sense.

But, upon examination of the clause considered, it is perceived that the recommendation is to "increase the donation" of $2,000 to the respondent. It was *his* donation. The direction is not to supplement or add to the donation but to "increase" it—that is, enlarge its proportions, keeping it yet the original thing. If he had meant his wife to add a separate gift, it would have been a natural and simple thing to have so recommended. But by using the word "increase" he has reserved to himself credit for the benefaction, retaining it his creature.

Passing further down in the recommendation, it is to be also noted that the increase is to come after the wife's death—after her estate in his property has intervened—and yet is to be a part of *his* estate. The legacy of $2,000 to the respondent is to be increased "so as to make her part of *my* estate equal" &c. Here again he retains property in the bounty. If the increase was to be the voluntary offering of the wife out of that which he had given to her, it would not be a part in his estate. It would then be a part in her estate.

It is impossible to reconcile these conflicting indications of intention with entire satisfaction, but the most reasonable suggestion in that direction, and the only one that will harmonize them at all, is, that the act of the wife, which the testator loosely styles gift, is the execution of the trust by the trustee. It is the

mere transferrence of formal legal title, the beneficial interest being given by the testator.

The expression, "gift of my wife," then, does not exhibit an intention at variance with the force and meaning given by the law to the word "recommend," as used in the will.

My attention has next been called to the fact that the testator recommends an increase of legacies previously defined with certainty in the same document. It is argued that his previous action exhibits the limit of his imperative desire and shows that he can and does unequivocally provide for the accomplishment of it. As it appears at this stage of the discussion, this circumstance is of considerable evidential weight, for it indicates very clearly that the testator had ability to express his exact meaning. Now, possessing that ability, the inference is just, that a marked change in his phraseology from that which is absolute, evinces a change in design.

In construing the will of Rowland Jones, in *Dutton v. Pugh, 18 Stew. Eq. 426*, I met a change of phraseology illustrative of this situation. I there thought that, standing alone, it was not sufficiently strong to take the case presented out of the rule of construction I applied. My conclusion was acquiesced in by a majority of the judges of the court of errors and appeals (*S. C. sub nom. Jones v. Jones, 1 Dick. Ch. Rep. 554*), but was considered erroneous by a respectable minority of the judges of that court, one of whom wrote an able dissenting opinion in which the argument here relied upon was clearly and strongly stated. It is not necessary at this point to express an opinion as to the weight of this circumstance here, for I think it is controlled by the effect of the interlineation, in the recommendation, which I have not yet considered.

It is quite apparent that, after the testator prepared his will, he critically re-examined it. This is evidenced by two interlineations. At the foot of the first page of the will, breaking in upon and dividing the bequest of $2,000 to the Presbyterian church at Mendham, he tersely provided an annuity for his mother, and, further on, made the interlineation, already referred to, between the two recommendations to his wife. The latter

of these interlineations was unquestionably the product of thought upon the whole will, as he had prepared it. When it was made, there were before him his unquestionably absolute legacy to the church and bequest to the respondent, and, as well, his subsequent declaration with reference to the same objects of his bounty. He then read in the document that he gave the residue of his estate to his wife with power of disposition subject to his recommendation. The recommendation was two-fold—*first*, to double the fund which was to be primarily devoted to the care of the lot and monument in the cemetery where his son was buried; and, *second*, to prepare a reward for the faithful companion of his mother, if she should continue that companionship until the mother died. As he read, the question whether his recommendation was imperative became the subject of his consideration, and deliberately, at the end of the first part of it, he wrote the words, "and at her Plaisure if she My Wife feel dispose to do so but it is not obligatory." The second part of his recommendation was not touched. He allowed the adverb "also," commencing with a capital letter, to remain fulfilling its office in referring the verb "recommend" to another subject, which he chose to leave as it originally stood. The mere fact of his failure, under such circumstances, to clearly indicate that the second part of his recommendation was not to be imperative, I think is convincing evidence that he desired it to be regarded as the law construes it. It is but natural to assume that he considered that recommendation as an offered reward to the respondent, which she might securely earn, and that the certainty of its payment would induce the fulfillment of the condition he imposed, and thus inure to the benefit of his mother, to whom he was bound by the strongest natural tie. The explicit particularity of the provisions of this recommendation is not to be lost sight of as a powerful aid in justifying this assumption.

It is suggested that the testator may have intended his interlineation to be a qualification of his second recommendation; that it may have been his intention to commence that recommendation with it, so that it should read, "and at her Plaisure iif she My Wife feel dispose to do so but it is not obligatory also

to increase," &c.   I dismiss this as untenable, for, in the first place, the usual office of the conjunction " and " is to signify that a word or part of a sentence is to be added to that which precedes, not to that which follows.   Besides, to use it as a connection with that which follows, requires a parenthetical qualification in advance of the matter qualified.   Such was not the testator's style in writing.   His qualifications and explanations invariably follow the principal matter.   This is to be remarked of the bequest of the 100,000 francs, or the $20,000, to Charles D'Assier, to be given to him in railroad bonds, or in exchange on Paris, to which is appended, " this I leave to the discretion of my wife Margaret Vinot," of the legacy of $2,000 to the respondent, to which is added, " the young girl who live with my mother, this is a recompanse that I give to her for faithful services and devotion to my mother," and of the legacy to the Presbyterian church at Mendham, which was " to be kept in the seaman savings Bank " &c.

My conclusion, after a careful study of this will, is, that without the aid of the rule of construction I first stated in this discussion, the testator's intention that his recommendation in favor of the respondent should be imperative appears, and that the application of that rule fairly ascertains that intention.   It is clear that the testamentary provision discussed is not taken out of that rule by any appearance of intention, upon the part of the testator, outside of the natural significance of the word " recommend," that his wife shall have discretionary power to control or defeat the desire he has expressed.

This conclusion would lead me to affirm the decree of the orphans court were it not for the fact that the decree determines that the respondent shall be paid interest upon the $18,000 provided for her from the 21st day of September, A. D. 1889, which was the date of the decree of distribution made by the orphans court.   It is a rule, that where the will is silent as to the time when a general legacy shall be payable, interest may be recovered from one year after the testator's death.   One year is allowed the executor to provide for the payment, and after that year has expired interest is allowed as damages for the delay.

And it is also a rule, that legacies made payable at a future time, or upon the happening of a future event, will not carry interest before the arrival of that time or the happening of that event. In other words, in such cases, the right to interest begins when the right to receive the legacy arrives. And this is so, even though the legacy vest before that right matures.

The decree of the orphans court, so far as it deals with interest, is not within either of these rules, and I know of no rule by which it can be supported. The second of the rules I have stated must govern here. It is clear that Vinot did not mean that the respondent should receive her legacy until the death of his mother, and that even then she should not have it if his wife survived. Her receipt of it was to be postponed until the death of both the wife and mother. The wife is dead. When the mother dies, the respondent will be entitled to the legacy, and from the date of that death she may recover interest.

The decree must be reversed.