23 N.J. Super. 170 (1952)
92 A.2d 820
BANKERS TRUST COMPANY, A CORPORATION OF THE STATE OF NEW YORK AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, SURVIVING EXECUTOR OF THE LAST WILL AND TESTAMENT OF WILLIAM J. BERG, DECEASED, PLAINTIFF-RESPONDENT,
v.
NEW YORK WOMEN'S LEAGUE FOR ANIMALS, A NON-PROFIT CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT, AND DOROTHY K. FUGUET, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF WILLIAM D. FUGUET, DECEASED, AND GEISSE FUGUET, DEFENDANTS-CROSS-APPELLANTS, AND THE UNKNOWN HEIRS AND NEXT-OF-KIN OF WILLIAM J. BERG, DECEASED, AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1952.
Decided November 12, 1952.
*174 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Donald B. Kipp argued the cause for defendant-appellant New York Women's League for Animals (Messrs. Pitney, Hardin & Ward, attorneys; Mr. Arthur J. Sullivan, Jr., on the brief).
Mr. Alfred C. Clapp argued the cause for defendants-cross-appellants Dorothy K. Fuguet, executrix aforesaid, and Geisse Fuguet (Mr. George S. Fischler, on the brief).
Mr. Everett M. Scherer argued the cause for Bankers Trust Company, surviving executor aforesaid (Messrs. Riker, Emery & Danzig, attorneys).
Mr. Maurice E. Gold, substituted guardian ad litem, pro se.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Involved in the appeal and cross-appeal taken from the final judgment of the Chancery Division of this court is the proper construction of the will of William J. Berg who died on March 13, 1950, a resident of New Jersey. His wife, Rita Fuguet Berg, predeceased him. No children were born of the marriage and decedent left no known heirs-at-law or next-of-kin him surviving.
Berg's last will and testament was duly admitted to probate by the Surrogate of Essex County on April 21, 1950, *175 and letters testamentary thereon were issued to plaintiff and William D. Fuguet, two of the executors named therein. Clarence M. Tappen, the third executor named in the will, predeceased the testator. William D. Fuguet died June 21, 1950, and plaintiff has continued to act as sole surviving executor. Decedent had also designated plaintiff, Tappen and Fuguet as trustees under the will.
By the provisions of his will (to take effect upon his surviving his wife) decedent made a number of cash bequests, among them a gift of $10,000 to the New York Women's League for Animals (hereinafter called "League"). By paragraphs 13 and 14 of Article III of the will he disposed of his residuary estate as follows:
"13. All the rest, residue and remainder of my property, of whatsoever nature and wheresoever situated, of which I shall die seized or possessed, or in which I shall have any right or title whatsoever, or over which I shall have any power of appointment at the time of my death, up to Two Hundred Thousand Dollars ($200,000.) (free of tax), I give, devise and bequeath unto the New York Women's League for Animals, Inc., a corporation organized under the laws of the State of New York, it being my desire that this money should be used for the purchase of a farm in a rural district which shall be used for the care of animals that may come under its care.
14. Should my residuary estate exceed the sum of Two Hundred Thousand Dollars ($200,000.) after the payment of all charges, taxes, expenses of administration, commissions, etc., then such excess shall be distributed to the survivor or survivors of the following persons in equal proportions:  Rita Fuguet Laws, William D. Fuguet and Geisse Fuguet."
Rita Fuguet Laws, a niece of testator's wife, predeceased the testator. Since she is not within the class of persons referred to in R.S. 3:2-18 (now N.J.S. 3A:3-13), the bequest to her of a share in the residuary estate has lapsed. William D. Fuguet, as already noted, survived the decedent; he died testate and letters testamentary were duly issued to his widow Dorothy K. Fuguet by the Surrogate of New York County, New York, upon the probate of his last will and testament in that court. Geisse Fuguet, a nephew of decedent's wife, also survived decedent.
*176 The residuary estate, before costs of these proceedings (in excess of $4,500), is estimated at about $55,000. There is also a trust for the life benefit of Louise Pomme, maid to decedent's wife, and her mother, having a value at the time of the trial of approximately $30,000. Under the will this fund will fall into the residuary estate upon the death of the survivor of the two life beneficiaries. Thus, some $50,000 is presently available to the League under paragraph 13, to be augmented at a future undetermined date by an estimated $30,000.
The League advised the surviving executor that it could not accept the gift if it were determined that paragraph 13 imposed a condition that the fund was to be used for the indicated purpose only, since this would require the League to embark upon an entirely new project involving expenses substantially greater than any amounts which it might receive. The executor thereupon instituted this action to construe the will and, in particular, to obtain a judicial determination as to the distribution of the residuary estate under paragraph 13 and of the remainder of the Pomme trust. It joined as defendants the League, Geisse Fuguet and Dorothy K. Fuguet, as executrix of the last will and testament of William D. Fuguet. The State of New Jersey was made a party defendant because of the possible escheat of the property (R.S. 2:53-15 et seq., now N.J.S. 2A:37-11 et seq.). Decedent's unknown heirs and next-of-kin were brought in as defendants under an amendment to the original complaint. All defendants except the State have answered, the substituted guardian ad litem appointed by the court (Rule 3:17-3) answering on behalf of the unknown heirs and next-of-kin.
The pleadings define the positions taken by the several answering defendants. The League contends that the language of paragraph 13 is merely advisory and precatory, and decedent did not intend to impose a condition or limitation. If, however, the language be held mandatory, the League claims the residue should be distributed to it under the *177 cy pres doctrine. On the other hand, Dorothy K. Fuguet, as executrix, and Geisse Fuguet, the contingent residuary beneficiaries, maintain that paragraph 13 constitutes a mandatory direction and, since the League refuses to accept the gift so conditioned, the trust must fail; that the doctrine of cy pres is inapplicable, and that paragraph 14 of the will is sufficient to pass to them the legacy bequeathed under paragraph 13 as well as, eventually, the principal of the Pomme trust. The substituted guardian ad litem agrees with the Fuguets up to the point where they claim the funds; he argues they do not take, but that decedent died intestate and the funds escheat to the State.
After a hearing, the Chancery Division judge filed his opinion (17 N.J. Super. 398 (Ch. 1952)) and entered the judgment under appeal. That judgment holds: (1) the trust created by paragraph 13 of the will is a charitable trust; (2) the provisions of that paragraph are "mandatory and imperative"; (3) the gift did not lapse by reason of the League's refusal to accept it; (4) it did not become part of the residuary estate to be disposed of under paragraph 14 of the will; (5) decedent did not die intestate with respect to the legacy bequeathed by paragraph 13 or the principal of the Pomme trust, and these funds did not escheat;
(6) the will exhibits testator's general intention to make gifts to charity, particularly to those connected with the care of animals; and (7) testator's intention can be effectuated "as nearly as possible" by awarding the legacy under paragraph 13, as well as the principal of the Pomme trust upon the death of the life beneficiaries thereof, "to such charitable institution or institutions as shall have among their objects the care of animals and which maintain, or are willing to purchase and maintain, a farm in a rural district for the care of animals." The plaintiff, as trustee, was directed to retain these funds until the court approved distribution to such organization or organizations as it deemed qualified to receive them, for the purposes stated in paragraph 13 of the will.
*178 We turn our attention, then, to the language of Article III, paragraph 13 of the will:
"* * * it being my desire that this money should be used for the purchase of a farm in a rural district which shall be used for the care of animals that may come under its care." (Italics ours.)
For almost a century it has been the settled doctrine in this State that unless a will indicates otherwise, the expression of a desire on the testator's part that a bequest be applied to a particular purpose, creates a trust.
In Deacon v. Cobson, 83 N.J. Eq. 122 (Ch. 1914), Vice-Chancellor Leaming held that the words "wish," "desire," and "request" used in the will and codicil which he was called upon to construe, were imperative and created a trust. He said (at page 124):
"A rule of construction early adopted by the English court of chancery was to the effect that when, by will, property is given absolutely to a person, and the same person is by the testator `recommended,' `entreated,' `requested' or `wished' to dispose of that property in favor of another, the recommendation, request or wish will be held to be imperative and to create a trust, if the subject and objects of the trust are certain. That rule of construction was adopted by our court of last resort more than half a century ago, and has since been uniformly recognized by the courts of this state; it cannot be now questioned in this court. Van Duyne v. Van Duyne, 15 N.J. Eq. 503; Eddy v. Hartshorne, 34 N.J. Eq. 419; Wood v. Camden Safe Deposit & Trust Co., 44 N.J. Eq. 460; Eberhardt v. Perolin, 48 N.J. Eq. 592; S.C. (reversed on appeal, but soundness of rule not questioned), 49 N.J. Eq. 570; Cox v. Wills, 49 N.J. Eq. 130; S.C. (reversed only as to method of accounting), 49 N.J. Eq. 573. It necessarily follows that the requests of testatrix in the will and codicil here in question must be given the same force as though the language adopted by testatrix had been, wherever the word `request' occurs, it is my will and I do hereby order and direct. With this rule of construction uniformly recognized by our courts for so long a period of time, testators and scriveners may be said to have been privileged to rely upon its existence and future recognition."
Other New Jersey cases applying or recognizing the former English doctrine which stemmed from Malin v. Keighley, 2 Ves. Jr. 333, 30 Eng. Repr. 942 (1794), are Ryder v. Myers, 113 N.J. Eq. 360 (Ch. 1933), affirmed 115 N.J. *179 Eq. 169 (E. & A. 1934) and First-Mechanics National Bank, etc. v. First Mechanics National Bank, etc., 137 N.J. Eq. 106 (Ch. 1945).
The early English view was never actually passed upon by the former Court of Errors and Appeals. In Van Duyne v. Van Duyne, 14 N.J. Eq. 397 (Ch. 1862), Chancellor Green rejected that view and accepted the modern rule. His decision was reversed on appeal, but without opinion, 15 N.J. Eq. 503 (E. & A. 1863), and it was therefore assumed that our highest court adhered to the old English rule. See, for example, Eberhardt v. Perolin, 48 N.J. Eq. 592, 599 (Prerog. 1891), reversed on other grounds 49 N.J. Eq. 570 (E. & A. 1892). The Chancery Court reiterated the doctrine in Ryder v. Myers, above, affirmed by the Court of Errors and Appeals for the reasons stated by Vice-Chancellor Sooy, 115 N.J. Eq. 169 (E. & A. 1934).
The English courts have overruled the doctrine established in their earlier cases. Lambe v. Eames, L.R. 6 Ch. 597, 25 Eng. Rul. Cas. 471 (1871), and the overwhelming majority of the courts in the United States have accepted the more modern view. 1 Scott on Trusts (1939), § 25.2, p. 155. The majority view is that mere precatory expressions are held not to carry the force of command; to determine whether the testator intended to impose enforceable duties, one must not strain his words but look to manifestations of interpretation contained in the will construed under general principles. Restatement of the Law of Trusts (1935), § 25, p. 76; 6 New Jersey Practice (Clapp, Wills and Administration) (1950), § 264, p. 12. The more recent cases have expressed disapproval of the earlier rule and noted that its application frequently defeated what was evidently the real intention of the testator. Eighty years ago James, L.J., said in Lambe v. Eames, above, that "in hearing case after case cited, I could not help feeling that the officious kindness of the Court of Chancery in interposing trusts where in many cases the father of the family never meant to create trusts must have been a very cruel kindness indeed."
*180 The League in its main brief intimates that the case of Marx v. Rice, 1 N.J. 574 (1949), cited by the judge below overturns the English doctrine adopted and followed in this State for so many years. In that case testator gave his wife a general power of appointment. By a subsequent paragraph of his will he "requested" the donee to make such donations as she might "deem proper" to such charitable institutions in Essex County, New Jersey, as she might select. The will then uses the following words:
"* * * `and I do further request her * * * to include among the beneficiaries by her to be designated such of my own blood relations as she may deem worthy to be the recipients of her bounty.'" (Italics ours.)
She appointed part of the fund in favor of testator's blood relations. It was contended that the quoted provision was mandatory and converted what would otherwise be a general power into a power in trust for the collateral line of the donor, thereby prohibiting the donee from designating any beneficiaries who were not of that line. The court did not so interpret the will, Justice Ackerson stating (1 N.J., at pages 582-583):
"The word `request' was not used here in a mandatory sense. It may be used as a command or an entreaty depending upon the context in which the word is inserted, and the circumstances attendant upon its use. However, the real test is whether or not the testator intends, by his language, to control the disposition of his property. 1 Page on Wills, § 91, p. 199. We conclude that here it was not so intended."
In its reply brief, counsel for the League states as an "inescapable" conclusion that the Marx case overruled the First-Mechanics National Bank case, above, and the doctrine for which it stood. We will not infer that the Supreme Court did so sub silentio; if it intended to overrule a settled doctrine it would have at least referred to the First-Mechanics National Bank case or to those cases dealing with precatory trusts which preceded it.
*181 In our view, the court in Marx v. Rice did nothing else than more accurately define the precatory trust doctrine. That doctrine has not been carried so far in New Jersey as to require that where precatory words are used, a trust must be set up regardless of other language in the will. The doctrine operates when such words are used and their context indicates they were intended as mandatory. If there is other language indicating that no trust was intended, then there can be no trust. Thus, in Marx v. Rice, above, Justice Ackerson pointed out that the use of other words in the will such as "include" and "her bounty," made it clear that the word "request" was not employed in a mandatory sense. It is to be observed, further, that in the First-Mechanics National Bank case Vice-Chancellor Jayne considered the entire will in determining the testamentary intention.
The League next argues that the doctrine of precatory trusts finds recognition only in cases dealing with an apparent absolute gift to one person followed by the expression of a desire or request that it be used for the benefit of another. It is not applicable, however, in a case like the present where a gift is made to an individual or institution, with the request that it be used by the beneficiary in a given manner or for a suggested purpose. This supposed distinction was recognized by the court below, when it said (17 N.J. Super. 398, at pages 403-404):
"Moreover, the situation in this case does not fall within the class of cases where the English rule has been applied. It is entirely different. Here, we do not have an absolute bequest to a person who is requested to dispose of the property to another. Instead, we have a bequest to a charitable institution with the expression of the `desire' of the donor that it be devoted to a particular purpose."
No reason is suggested why the doctrine should be confined in this way, and no authority for such limitation is cited either in the opinion below or by counsel for the League. It is true, and cross-appellants Fuguet admit, that the doctrine is often stated in the manner suggested by the League, but that is because such a statement is appropriate *182 to the facts in most cases. Almost always one finds a bequest to A with the request that he use it for the benefit of B; only occasionally does one find a bequest to A with a request that he make a particular application of it. In Eberhardt v. Perolin, above, the Ordinary held that a wish or desire on the testator's part that a particular application be made of a gift, creates a trust. 48 N.J. Eq. 592, 596. Cf. Kirkbank v. Hudson, Dan. 259, 7 Price 212, 146 Eng. Rep. 951 (Ex. Ch. 1819).
An examination of the entire will convinces us that testator intended the League to take the bequest under Article III, paragraph 13 in trust for a specific purpose and not absolutely. By paragraph 1 of this article, he bequeathed the sum of $10,000 to the League. That bequest was general and absolute, in contrast to the residuary bequest in paragraph 13. The League was free to use the $10,000 in any way it saw fit. If testator intended the bequest in paragraph 13 to be an absolute one, he could have plainly said so, using language similar to that in paragraph 1. He did not have to make two separate gifts to the same beneficiary if he wanted both to be absolute. The fact that he did so demonstrates his intention to make other than an absolute disposition in paragraph 13, and to create a trust thereunder. The will was very carefully drawn and it is not reasonable to suppose that testator, after giving an absolute gift to the League in one clause, would then give another gift, equally absolute, to it in a subsequent clause. In re Farrelly, 214 Cal. 199, 4 P.2d 948 (Sup. Ct. 1931), on which the League relies, is not contrary to our holding.
Our attention also fastens upon the provisions of Article III, paragraph 2:
"I give and bequeath all books forming part of my estate to my wife's brother, Howard Fuguet. It is my request that he retain for his own use as many of such books as he wishes and that he divide the remainder after selecting those for himself among such persons as he thinks will appreciate them, using his discretion in making this distribution, but this request shall not in any way limit the gift and bequest to him, which is absolute." *183 This language indicates that the will was prepared with the New Jersey law as to precatory trusts in mind. Had testator intended the bequest under paragraph 13 to be absolute, he could, as he did in paragraph 2, have expressly provided that his "desire" should not in any way limit the absolute character of his gift. The fact that he did not do so indicates that he did not intend to make an absolute gift under paragraph 13, but intended only a gift in trust for a definite purpose.
The League anticipates this argument in its brief by arguing that testator, having once properly defined a word of entreaty, did not have to do so again when such a word was used for a second time in paragraph 13. In the first place, paragraph 13 appears much further on in the testament, and is separated from paragraph 2 by ten clauses. We are not to assume that the draftsman of the will, which bears every mark of careful and thoughtful preparation, would take the risk that the language of paragraph 2, which applies to the specific bequest there made, would be used in defining the language of paragraph 13. In the second place, the word "desire" is a much stronger word than "request."
It is familiar law that the testator's intention is to be gathered from a reading of the entire will. Trafton v. Bainbridge, 125 N.J. Eq. 474, 479 (E. & A. 1939); Fidelity Union Trust Co. v. Laise, 127 N.J. Eq. 287 (Ch. 1940). Paragraph 13 of Article III is not to be considered in a vacuum, and proper consideration must be given to the rest of the will, including paragraphs 1 and 2 of that article. We must conclude that testator did not intend an absolute gift to the League under paragraph 13, but a gift to it in trust for the particular purpose stated.
Since the League will not accept the bequest upon such a trust, the gift must fail unless the doctrine of cy pres is applicable. Morristown Trust Co. v. Morristown, 82 N.J. Eq. 521 (Ch. 1913). That the gift to the League is a gift for a charitable purpose is conceded by all. A trust for the care of animals is charitable in nature. Pitney v. Bugbee, *184 98 N.J.L. 116 (Sup. Ct. 1922), affirmed 98 N.J.L. 889, 892 (E. & A. 1923); Burlington County Trust Co. v. New Jersey Society for the Prevention of Cruelty to Animals, etc., 12 N.J. Super. 369 (Ch. Div. 1951). The League contends that if paragraph 13 be construed as imposing a condition or limitation, the bequest of the residue should be distributed to it under the doctrine of cy pres. The Fuguets argue that the League is not aided by that doctrine.
Under the doctrine of cy pres, where a charitable trust cannot be carried out in the manner provided for by the testator and he has expressed in his will a general charitable intention as to the trust fund which can be effectuated, the court will not allow the gift to fail, but will provide some substitute charitable gift in order to carry out as nearly as possible his general charitable intention. The doctrine is deeply rooted in the law of this State ever since the leading case of MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652 (E. & A. 1905). The court there pointed out (at pages 672-673) that the doctrine is applicable only where the testator "had two objects in view  one primary or general, and the other secondary or particular * * *." If the will contains no expression demonstrating a general charitable purpose and no inference as to such a purpose, the cy pres doctrine may not be invoked. As was said in Brown v. Condit, 70 N.J. Eq. 440 (Ch. 1905), at pages 445-446
"* * * A court of equity, under limitations which I need not discuss, will carry out the expressed general charitable purpose of the donor by the use of means other than those specified by the donor when such specified means have become impracticable or impossible of use. But in all such cases there is a general or comprehensive charitable purpose expressly set forth in the will or inferable from its provisions, beyond which the court will not go in its substitution of a practicable for an impracticable means. The court is acting within the donor's charitable purpose, and not beyond it or alongside of it or next to it."
The doctrine is authoritatively set out in 2 Restatement of the Law of Trusts (1935), § 399, p. 1208:
*185 "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."
See, also, 3 Scott on Trusts (1939), § 399, p. 2098; 6 New Jersey Practice (Clapp, Wills and Administration) (1950), § 275, p. 34. It is clear that something more than a general charitable intention is required. For cy pres to be invoked properly there must be present an intention of the testator to devote the particular property to general charitable purposes.
It must be noted in passing that the trust here is not being carried out for the reasons usually found in the cases, but only because the League refuses to accept the legacy if it must be used to purchase a farm in a rural district for the care of animals. It anticipates that such a project might involve expenditures substantially greater than the amount realized. The League argues that testator's request has become impossible of performance for lack of funds. This is not entirely so; there was evidence that testator's purpose could be carried out at a cost substantially less than the League estimates. It is true that the venture would be on a smaller scale; fewer animals would be accommodated, but the project, in the view of the expert witness for the Fuguets, could be carried through with only $80,000 in capital funds.
In the light of the principles just adverted to, may the cy pres doctrine be applied in the circumstances of this case? Testator's sole intention under paragraph 13 was to have the League purchase a farm in a rural district, to be used for animal care. The charitable purpose is just as clear and specific as is the trustee designated to carry out the project or the fund to be used to achieve the desired end. Lacking is the required intention on the part of decedent to devote the particular bequest to a more general charitable *186 purpose. This is the test, and it must be met. It avails the League nothing to point to absolute bequests made earlier in the will to certain charitable organizations and civic enterprises (among them the absolute gift of $10,000 to the League for its general purposes), or to cite the testamentary provision establishing a $20,000 trust fund whose income was to be devoted to the care of such domestic pets as survived testator, or to stress the interest which he and his wife showed in the work of the League over a period of some 25 years. These do not spell out, as the League insists, that testator's dominant purpose insofar as the bequest under paragraph 13 is concerned was the care of animals, generally.
To permit the doctrine of cy pres to be applied so that the League receives the funds for its general purposes would defeat testator's stated purpose. The League may not refuse to purchase and maintain the farm and then, by invoking cy pres, thwart testator's clearly expressed intention. There is some indication in the League's brief that the money might, among other things, be used to pay for completing its current building program, involving the enlargement and modification of existing facilities at its hospital for animals in New York City, the Ellen Prince Speyer Hospital. Testator was alive when that program was undertaken and unquestionably knew all about it. Nonetheless, he chose to leave his will stand exactly as written; what he had in mind for the League to do with the bequest in question was not the expansion of either its in-city plant or in-city program, but the establishment of a rural facility where animals could be cared for in less confining quarters, out in the open countryside. We will not apply the cy pres principle to substitute the one for the other.
The League relies on Rowe v. Davis, 138 N.J. Eq. 122 (Ch. 1946), in support of its contention that the bequest should under the cy pres doctrine be paid over to it for its general purposes. There the will, the inartistic product of the testatrix' own hand, provided for a bequest to the "Home and Nursery for the Blind." There was no organization *187 by that name, but the court determined that testatrix undoubtedly had in mind the home and nursery school for blind babies maintained in Summit, New Jersey, by the International Sunshine Society whose name was later changed to Arthur Sunshine Home and Nursery School for Blind Babies, a charitable corporation which had, as one of the purposes for which it was chartered, the general care, maintenance and education of blind children of pre-school age. The corporation was in existence at the time testatrix died, but it had two years prior thereto closed the Summit home for lack of funds. After reciting the several purposes for which the Arthur Sunshine Home and Nursery School for the Blind was incorporated, the vice-chancellor held that in view of the facts and the will it would violate testatrix' intention to give the funds to the corporation for its general purposes. He concluded that testatrix' charitable aim was "to help the work for blind babies," and that intent could be carried out by giving the bequest to the corporation, provided the funds were devoted solely to blind children of pre-school age within the State of New Jersey.
The Rowe case does not support the League's view. The court found that the general charitable intent with respect to the legacy involved was to help the work for blind babies. We find no similar broad charitable aim here  an intention that the funds under paragraph 13 were to be used for the care of animals generally. The $10,000 legacy given by another provision of the will was testator's method of giving the League free funds, to be used as it willed. In paragraph 13 the testator was specific; he spelled out the particular charitable purpose for which the funds were to be employed.
It was the conclusion of the Chancery Division judge that "testator's purpose will be effectuated as nearly as possible by awarding the fund to one or more existing charitable institutions or organizations among whose objects is the care of animals and which maintain or are willing to purchase a farm in a rural area for such care." Distribution of the residuary bequest was reserved until the name or names of *188 such qualified organization or organizations was submitted to and approved by the court. In our view, proper application of the cy pres doctrine under the particular facts of this case would prevent giving the bequest to any other charitable organization, even though it would agree  assuming one could be found that would so agree  to use the funds to buy a farm for the care of animals.
Read in the light of the circumstances surrounding the testator, the will shows that his only intention as regards this particular bequest was that it should go to the New York Women's League for Animals for the purpose designated in paragraph 13. If the testamentary scheme fails, the gift must fail. From the evidence adduced we are of the opinion that testator entrusted the duty of carrying out his stated purpose to the League, and to the League only. Absent is any proof of the character found in the usual cy pres case indicating that testator entertained any intention of a broader charitable nature.
There is no proof that testator was familiar with any charitable organization, other than the League, which conducted a farm for animals. Indeed, it may be observed that such a non-commercial undertaking is, in the common experience, rather rare. Nor is there any indication whatsoever that testator wanted any such other organization, if one exists, to carry out the trust. In requesting the League to set up the farm for the care of animals, he named the organization in which he placed full faith and confidence for executing the project. As the League itself points out, testator and his wife were deeply interested in the work of the League for some 25 years. Testator had been a good friend of the husband of the League's founder, and through him he first became interested in its work. Soon after he joined as a life member. He made annual contributions to the League and served for a time on its finance committee. It cannot reasonably be maintained that giving the legacy to some other charity, of which testator probably knew nothing, for establishing an animal farm would be fulfilling the *189 confidence he had reposed in the League. Cf. Brown v. Condit, 70 N.J. Eq. 440 (Ch. 1905).
The Chancery Division relied upon Shannon v. Eno, 120 Conn. 77, 179 A. 479 (Sup. Ct. Err. 1935), in making the determination it did. The bequest there was for the purpose of "founding and supporting a Cattery * * *." That case is clearly distinguishable, for testatrix named no institution to act as trustee, whereas testator here designated a particular institution in which he was personally very much interested. The court also cited two other cases, equally inapplicable. The first, Patton v. Pierce, 114 N.J. Eq. 548 (Ch. 1933), involved a bequest of the residuary estate "to establish an Old Men's Home * * *," and may be distinguished on the same ground as the Shannon case. The second was Cinnaminson Library Assn. v. Fidelity-Philadelphia Trust Co., 141 N.J. Eq. 127 (Ch. 1948), which involved a bequest to a named charitable organization for a specific charitable purpose. However, unlike here, no such organization was in existence at the time testatrix died nor, so far as the court could determine, had any such organization ever existed. Mirinda v. King, 11 N.J. Super. 165 (App. Div. 1951), also cited by the trial judge and in which Judge Jayne comprehensively reviewed the New Jersey law on charitable trusts, differs from our case in that there was no evidence of a confidence born of long and active association with a particular trustee, requiring that the testator's intention to establish a somewhat unusual charity be carried out only by such trustee.
A case somewhat similar to this one because of the type of charity involved and the testamentary provisions is McCran v. Kay, 93 N.J. Eq. 352 (Ch. 1921), where the court held that since the trust was impossible of execution in accordance with the terms of the will or under the cy pres doctrine, the gift lapsed. The case is cited in 3 Scott on Trusts (1939), § 399.2, p. 2104 et seq.
The doctrine of cy pres being inapplicable and the gift to the League having failed, the question remaining for *190 determination is the disposition of the residuary gift under Article III, paragraph 13 and of the principal of the Pomme trust (upon the death of the surviving life beneficiary) under paragraph 10. Do the funds pass under Article III, paragraph 14, or did the testator die intestate, in which case the funds escheat to the State of New Jersey because no heirs-at-law or next-of-kin have been found after diligent inquiry? The substituted guardian ad litem argues for the latter alternative.
Paragraph 14 provides that should the residuary estate exceed $200,000 after the payment of all charges, taxes, expenses of administration, commissions, etc., "then such excess shall be distributed to the survivor or survivors" of Rita Fuguet Laws, William D. Fuguet and Geisse Fuguet, in equal proportions.
It is, of course, well settled that the courts will so construe a will as to prevent intestacy. Barrett v. Barrett, 134 N.J. Eq. 138 (Ch. 1943). The presumption against intestacy is particularly strong when the subject of the gift is the residuary estate. Bankers Trust Co. of New York v. Greims, 115 N.J. Eq. 102, 114 (Ch. 1934).
Ineffectual or lapsed non-residuary legacies pass under a residuary bequest (Allen v. Moore, 86 N.J. Eq. 357 (Ch. 1916), affirmed 87 N.J. Eq. 365 (E. & A. 1917)), and where a gift of part of the residuary estate is made to one and a gift over of the residue of the residuary estate is made to another, and the first residuary gift fails, it falls into the ultimate residuary gift. This conclusion is reenforced by the provisions of N.J.S.A. 3:2-19.1, carried over into the recent revision as N.J.S. 3A:3-14 which, as revised, applies to wills of persons dying after January 1, 1952. N.J.S.A. 3:2-19.1 provides:
"When a residuary devise or bequest shall be made to two or more persons by the will of any testator dying after the taking effect of this act, unless a contrary intention shall appear by the will, the share of any such residuary devisees or legatees dying before the testator and not saved from lapse by section 3:2-18 of the Revised Statutes, or not capable of taking effect from any other cause, shall *191 go to and be vested in the remaining residuary devisee or legatee, if any there be, and if more than one, then to the remaining residuary devisees or legatees in proportion to their respective shares in said residue." (Italics ours.)
"Person," of course, "includes corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals," unless otherwise restricted by the statutory language. N.J.S.A. 1:1-2.
A gift in one clause of the will of the residue of property not exceeding a certain sum, followed by a clause disposing of anything that should remain, can be read together as a single residuary clause. 3 Page on Wills (3rd (Lifetime) ed.), § 1000, p. 101.
The problem to be considered both under the common law and the statute is whether paragraph 14 of Article III indicates a contrary intention that the paragraph is not to carry the gift made in paragraph 13 which has failed.
The rule that residuary legatees will take an ineffectual or lapsed gift is grounded in the presumption that the testator intended to dispose of his entire estate and not die intestate with respect to any part thereof. It is to be presumed that he would have preferred to have such gift go to his residuary legatees rather than to his next-of-kin. Justice Depue, in the leading case of Sandford v. Blake, 45 N.J. Eq. 247 (E. & A. 1889), put it this way (at page 251):
"* * * A residuary bequest of personal estate carries not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of. A presumption arises in favor of the residuary legatee against every one except the particular legatee; for a testator is supposed to have given his personalty away from the former only for the sake of the latter. * * *"
Where a residuary clause contains some phrase like "not hereinbefore [or otherwise, or before] disposed of," it has sometimes been contended that such language indicates an intention that the residuary clause does not apply to prior gifts in the event of their lapse or other failure. But this contention has generally been denied. The courts take the *192 position that the use of such a phrase does not operate to change the general import of such recognized expressions as "rest," "residue," or "remainder," unless other language in the will necessitates such a result. 57 Am. Jur., Wills, § 1449, p. 974. Only when the will exhibits an intention on the part of the testator to except for all purposes from the operation of the residuary clause certain portions of the estate, have courts allowed an ineffectual or lapsed gift to pass by intestacy.
The principles controlling this case were laid down in Tindall's Ex'rs. v. Tindall, 24 N.J. Eq. 512 (E. & A. 1873), reversing the Chancellor below. The question presented there was whether a $5,000 legacy to testator's widow which had lapsed passed to the residuary legatee or went to the next-of-kin. The will provided for the $5,000 legacy and other gifts, and then disposed of the rest of the estate as follows:
"I give and bequeath whatever of my property shall remain after payment of the above, and due settlement of all my business, to my two friends, * * *."
The Court of Errors and Appeals held (at page 513):
"The rule applicable to the question to be solved, as stated in the text books, as well as in many adjudged cases, is that the residuary legatee is entitled as well to a residue caused by a lapsed legacy, or an invalid or illegal disposition, as to what remains after payment of debts and legacies. The only exception to the rule is, that where the words used show an intention on the part of the testator to exclude from the operation of the residuary clause certain portions of the estate, such intention as gathered from the whole will must not be defeated. Or the rule, embracing the exception, as stated in some of the books, is that the residuary legatee must be a legatee of the residue generally, and not partially so only. The rule is so firmly established, that citation of authority in its support is hardly necessary. * * *" (Italics ours.)
The court held the lapsed legacy passed to the residuary legatees and that the language used by the testator did not exclude the gift from the residue. Referring to the above *193 italicized exception to the rule, the court said (at page 513):
"The learned Chancellor, in the court below, held that the case now before us came within the exception to the general rule, because the estate given was that which should remain after payment of the legacies before given. But I cannot see that this form of expression in any wise limits or restricts the extent of the gift. The clause would have had precisely the same meaning and effect if it had been, in terms, of the residue of the estate. All that the testator could give to his residuary legatees, was what remained of his estate after payment of debts and particular legacies. The legal effect is precisely the same, whether the one form or the other is adopted. * * *"
Cf. Stout v. Stout, 44 N.J. Eq. 479 (Ch. 1888). The rule of the Tindall case was restated in Allen v. Moore, 86 N.J. Eq. 357 (Ch. 1916), affirmed 87 N.J. Eq. 365 (E. & A. 1916).
In Bernard v. Minshall, Johns, Eng. Ch. 276 (High Ct. Ch. 1859), quoted in the Tindall case, the court said (at page 299):
"All you have to consider is, whether the property is excepted in order to take it away, under all circumstances and for all purposes, from the person to whom the rest of the property is given; or whether it is excepted merely for the purpose of giving it to somebody else. If the latter, and the gift to somebody else fails, the donees of all except this property are entitled to take the whole."
This language is appropriate to the situation presented in the Tindall case as well as here. See, also, King v. Woodhull, 3 Edw. Ch. 79, 84 (V.C. Ct. N.Y. 1837), quoted in the Tindall decision.
Paragraph 14 reveals nothing of an intention by testator to except from its operation the gift to the League under paragraph 13, should that gift fail. Had testator, as is the usual case, left "all the rest, residue and remainder of my estate" to the named beneficiaries, the construction given would be that he thereby indicated an intention that they were to take what was left over  what remained in excess  of gifts already made. All ineffectual or lapsed gifts would *194 then, of course, fall into the residuary. In the circumstances of this case there is, in legal effect, no real difference between a gift of $200,000 to the League with a gift over of the "rest," "residue," or "remainder," and the provisions of the will which testator executed and which disposed of the excess of the residuary estate over $200,000.
The rule of Tindall's Ex'rs. v. Tindall, above, applies. Guaranty Trust Co. of New York v. First National, etc., of Morristown, 8 N.J. 112 (1951), relied on by the substituted guardian ad litem, is not to the contrary. The will in that case spoke of a residue but did not state to whom the residue was to go, and therefore the court found intestacy.
The legacy under paragraph 13 having lapsed, the gift passes under paragraph 14 equally to Geisse Fuguet and the estate of William D. Fuguet. And so, also, with the principal of the Pomme trust. It appears that Louise Pomme is alive, but her mother is dead. Upon the death of Louise Pomme, the principal will be equally divided between Geisse Fuguet and the estate of William D. Fuguet.
The judgment below must, accordingly, be modified. The provisions of Article III, paragraph 13, are mandatory; the doctrine of cy pres is not applicable to the charitable trust set up thereunder; and the cross-appellants, Dorothy K. Fuguet, executrix under the last will and testament of William D. Fuguet, and Geisse Fuguet, are entitled in equal shares to that portion of the residuary estate passing under paragraph 13, and, upon the death of the surviving life beneficiary of the Pomme trust established under Article III, paragraph 10, to the principal of that trust. The judgment, as so modified, is affirmed.